Argued January 16, reversed and remanded for trial
April 23, reconsideration denied June 26, 1979

STATE OF OREGON, *Appellant,*
*v.*
LARRY ROBINSON, *Respondent.*
(No. C 76-11-16267, CA 11946)
593 P2d 1179

Catherine Allan, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Alex Christy, Portland, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Thornton and Lee, Judges.

THORNTON, J.

**THORNTON, J.**

The state appeals from the trial court's dismissal of the indictment upon defendant's motion. The sole issue is whether the trial court correctly determined that defendant's right to a speedy trial had been denied.[1]

Defendant was secretly indicted for second degree robbery on November 19, 1976. He was arrested on November 26. Defendant was found guilty January 25, 1977, but moved for a new trial. The motion was granted, and the order was entered March 4, 1977. Defendant reported for docket call in April.

The state, wishing to contest the granting of a new trial but not allowed to appeal such orders by statute, *see* ORS 138.060, on May 10 petitioned the Supreme Court for an alternative writ of mandamus directing the trial court to vacate the new trial order. The Supreme Court issued a writ but dismissed it on March 28, 1978. *State ex rel Redden v. Van Hoomissen,* 281 Or 647, 576 P2d 355 (1978). The state sought rehearing, which was denied May 23, 1978. *State ex rel Redden v. Van Hoomissen,* 282 Or 415, 579 P2d 222 (1978). On June 27, 1978, the case was set for trial on July 27. Defendant served the motion to dismiss on July 19. The new trial was removed from the docket and a hearing on the motion was set for July 31, 1978. At the conclusion of the hearing, the trial court granted defendant's motion.

---

[1] *Barker* delineates the analysis required by the federal constitution. The Sixth Amendment provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *." The speedy trial requirement applies to the states through the Fourteenth Amendment. *Klopfer v. North Carolina,* 386 US 213, 87 S Ct 988, 18 L Ed 2d 1 (1967).

The Oregon Constitution provides, in pertinent part: "* * * [J]ustice shall be administered * * * completely and without delay * * *." Art I, § 10. The analysis in *Barker v. Wingo,* 407 US 514, 92 S Ct 2182, 33 L Ed 2d 101 (1972), is used to analyze asserted violations of the state constitution's requirement. *State v. Ivory,* 278 Or 499, 504, 564 P2d 1039 (1977).

The criteria for determining whether defendant's right to a speedy trial has been violated are enumerated in *Barker v. Wingo,* 407 US 514, 92 S Ct 2182, 33 L Ed 2d 101 (1972). In *Barker,* the Supreme Court found no constitutional basis for setting a certain length of time during which a defendant must be tried, 407 US at 523, and declined to require that defendant demand trial, 407 US at 528.[2] Rather, the court found the burden for bringing defendant to trial to be on the state, not the defendant, *see* 407 US at 527, and set out a balancing test requiring the consideration of four factors: "Length of delay, the reason for the delay, the defendant's assertion of [the] right and prejudice to the defendant." 407 US at 530. (Footnote omitted.)

The length of delay has importance in two respects. First, the delay is examined to determine whether it is so long as to be "presumptively prejudicial," thereby triggering consideration of the other factors. *Barker,* 407 US at 530. Second, the length of the delay is a factor to be balanced in determining whether the right to speedy trial was violated. 407 US at 533.[3]

The state strenuously argues that the length of the delay was insufficient to trigger the speedy trial analysis. It claims that the delay was less than four months: two months and six days between the order granting a new trial and the state's petition for mandamus, plus one month and three days for the period between the final denial of mandamus and the date originally set for retrial. Thus, the state asks us to disregard the period from indictment to the order granting a new trial, and the period during which it

---

[2] However, the frequency and force with which defendant asserts the right is an important factor to consider in determining whether the right has been violated. *Barker,* n 1, *supra,* 407 US at 531-32.

[3] Professor Rudstein concludes that the court probably meant "prima facie unreasonable" by its use of "presumptively prejudicial," since its discussion of the components of prejudice to the defendant treats prejudice as a wholly separate factor from the mere length of time involved. Rudstein, *"The Right to a Speedy Trial: Barker v. Wingo in the Lower Courts,"* 1975 U Ill L F 11, 21-22. *But see State v. Ivory,* n 1, *supra,* 278 Or at 505.

sought mandamus. *Barker,* however, requires that the length of delay and the reasons be considered along with the assertion of the right to speedy trial by defendant and the prejudice engendered by the delay; it does not provide for a two-step process examining reasons and length of delay initially, and considering only unjustified delays in conjunction with prejudice and defendant's assertion of the right to a speedy trial.[4] *See* Rudstein, *The Right to a Speedy Trial: Barker v. Wingo in the Lower Courts,* U Ill L F 11, 20-21 (1975).

The period of delay from indictment to the date on which the case was scheduled for retrial was longer than 20 months. As the state concedes, such a lengthy period is sufficient to trigger the full four-factor analysis. *Cf.,e.g., State v. Ivory,* 278 Or 499, 564 P2d 1039 (1977) (10 1/2 month delay after indictment and before arrest sufficient to trigger further inquiry).

The second factor to be examined is the reason for the delay. The initial period, from indictment to the entry of the order for a new trial, was less than four months and not inordinate for prosecution of a robbery. As the state persuasively argues, the first 30 days of the period between the entry of the order granting a new trial and the time the state petitioned for an alternative writ of mandamus are relatively neutral, as that is the period allowed for appeals.

The state argues less persuasively that we should not hold it responsible for the 37 days it further delayed before filing and the time the Supreme Court spent deliberating on the petition for an alternative writ. In *Barker,* the court noted that even nondeliberate delays caused by prosecutorial negligence or overcrowded courts are chargeable to the responsible party, the government. 407 US at 531.

---

[4] *But see United States v. Jackson,* 508 F2d 1001, 1005 (7th Cir 1975) (decided after *Barker* but excludes the period elapsed during appeal).

The state's petition for an alternative writ of mandamus is a substitute for, and analogous to, an appeal. *See State ex rel Redden v. Van Hoomissen, supra,* 281 Or at 649.

The Court of Appeals for the Fifth Circuit enumerated three factors to be considered in assessing the justification for an appeal: "* * * [N]ecessity of the appealed question to the government's case, the strength of the government's position on that issue, and the seriousness of the crime." *United States v. Herman,* 576 F2d 1139, 1146 (5th Cir 1978).[5] We have noted that state attempts by motion and petition for writ of mandamus for change of judge should weigh heavily against the state, since the issue does not involve the defendant. *State v. Jenkins,* 29 Or App 751, 756, 565 P2d 758 (1977).

Here, all we are told is that the petition for alternative writ of mandamus contested the trial court's granting of defendant's motion for a new trial. We have no way of determining whether the state's position was strong, although the necessity to its case and the seriousness of the crime are clear. Furthermore, the grounds on which the alternative writ was dismissed and rehearing denied suggest that the state was, at best, negligent. While the Supreme Court could find no cases or rules governing the period within which a petition for a writ must be filed, *State ex rel Redden v. Van Hoomissen, supra,* 281 Or at 649, the state was much less diligent in filing the petition than it would have been in filing an analogous appeal, and the state attempted to excuse its late filing by arguing that it needed time to acquire a transcript found unnecessary by the Supreme Court, *State ex rel Redden v. Van Hoomissen, supra,* 282 Or at 417.

The remaining period is discussed below.

---

[5] *United States v. Herman,* 576 F2d 1139, 1146 (5th Cir 1978), involved an interlocutory appeal and an incarcerated defendant, but the general principles are applicable to a petition for a writ of mandamus for withdrawal of an order granting a new trial.

The third factor is defendant's assertion of the right to a speedy trial. The defendant appeared at docket call the month after the court entered its order granting a new trial. Defendant, however, did not move to dismiss on the grounds that he had been denied a speedy trial until several weeks had passed following the final decison of the Supreme Court denying the state's challenge to the grant of the new trial. The state implies that we should weigh against the defendant his failure to press his right to a speedy trial during the period the state was attempting to obtain an alternative writ of mandamus. We see no reason to do so since the decision of the Supreme Court would determine whether there would be a second trial. *Cf., State v. Jenkins, supra,* 29 Or App at 757 (unnecessary for defendant to raise speedy trial issue while Supreme Court determines whether trial judge should be disqualified). Defendant was not aware of the possibility that a witness in the first trial had become impeachable until shortly before he filed the motion. Defendant sufficiently asserted his right to a speedy trial.

Finally, the parties argue at length over whether defendant was prejudiced by the delay in impairment of the presentation of his case.[6] The relevant sequence of events is as follows:

June 27—trial set for July 27

July 11—defendant's witness convicted

July 19—defendant files motion to dismiss

July 27—date originally set for trial

July 31—hearing on defendant's motion to dismiss

August 14—date set for sentencing defendant's witness

---

[6] Defendant does not dispute the trial court's finding that defendant did not suffer "any particular disability as a result of the delay," although defendant would understandably worry about the case, and that any distress suffered by defendant because of the lengthy delay was insufficient, by itself, to amount to probable prejudice.

Defendant's witness testified at the first trial that the witness was at band practice when the robbery of the school lunchroom took place. Defendant contends that in a second trial the witness would have given a description of the person who actually committed the robbery, and the description would have indicated that the culprit was someone other than defendant. Defendant's testimony implies that another witness could testify similarly.

Defendant's witness was convicted of assault and first degree manslaughter. The deputy district attorney first admitted that he would use the conviction to impeach the witness, but later claimed that he would not, if the trial took place prior to entry of a judgment order and sentence, since it is not until such time that a conviction may be used for impeachment. *State v. Bouthillier,* 4 Or App 145, 476 P2d 209, 479 P2d 512 (1970), *rev den* (1971). Since defendant had been granted a hearing on his motion to dismiss and the case had been taken off the trial docket, it became highly unlikely that the trial could be completed before the conviction became usable for impeachment purposes. Hence, the state argues, defendant could have forestalled the prejudice by going to trial, which would likely have been completed before the witness became impeachable. Furthermore, the state argues that the impeachability of the witness is not of moment because another witness was available to defendant to give the same testimony.

In sum, there is little to indicate that defendant was actually prejudiced by the delay. As noted, however, a finding of actual prejudice is not necessary to finding a violation of the right to a speedy trial. *Moore v. Arizona,* 414 US 25, 94 S Ct 188, 38 L Ed 2d 183 (1973). The Supreme Court "[deemed] it proper to adopt the rule that where the other three factors are in the defendant's favor the prejudice factor is met if the evidence taken as a whole shows some reasonable possibility of prejudice." *Ivory,* 278 Or at 507.

[626]

In *Ivory,* the court found that defendant had established a reasonable possibility of prejudice "by identification of potentially favorable witnesses who could not be found due to a delayed trial. As * * * noted in *Barker v. Wingo, supra* at 532, 'If witnesses die or disappear during a delay, the prejudice is obvious.'" (Footnotes omitted.) However, the court went on to point out that "[p]ost-indictment and pre-arrest delay, as in this case, is inherently more damaging to defendant's ability to obtain a fair trial than those cases involving only post arrest delay." 278 Or at 508-09.

Here, in contrast to *Ivory,* the delay was not only after arrest, but after the first trial, at which defendant called the witness who subsequently became impeachable, but apparently failed to ask questions the answers to which would tend to exonerate defendant.

Hence, although the defendant asserted his right to a speedy trial, there was considerable delay, and much of the responsibility for the delay belongs to the state, defendant has not established the reasonable possibility of prejudice. We do not have the transcript and exhibits from the trial but the transcript of the hearing suggests that although there are two possible witnesses who could testify differently at the second trial than at the first, and more favorably to the defendant, defendant was planning to call the witness who had become subject to impeachment during the delay. Defendant's testimony did not establish that the other witness could not so testify or had similarly become impeachable. Defendant argues that the other witness may not testify the same as the impeachable witness as to the remainder of the latter's story, but there is nothing in the testimony of the hearing to indicate that such is the case. Defendant has not established a reasonable possibility of prejudice.[7]

_____

[7] *Ivory,* n 1, *supra,* also provides that where the delay is "manifestly excessive and unreasonable," and inadequately justified by the state, or if

Therefore, although generally great weight is given to the trial court's determination of factual matters, and hence its balancing of the factors and resultant grant of the motion for dismissal, *Ivory,* 278 Or at 508, n 7, here the trial court clearly erred.

Reversed and remanded for trial.

---

the state designedly ■■■■■■■■■ delayed to impair the defense, defendant is not required to make any showing as to prejudice. 278 Or at 506. In this case, however, the delay is not manifestly excessive and it is not apparent that the state acted purposefully to hinder defendant.