# STATE OF OREGON, *Appellant,*
## *v.*
# HAROLD JENKINS, *Respondent.*
## (No. C 76-07-10418, CA 6942)

565 P2d 758

John W. Burgess, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Roy Kilpatrick, Mt. Vernon, argued the cause for respondent. With him on the brief was William A. Galbreath, Milton-Freewater.

Before Schwab, Chief Judge, and Lee and Richardson, Judges.

RICHARDSON, J.

## RICHARDSON, J.

The state appeals dismissal of the indictment for lack of speedy trial.

This appeal arises from a complex procedural background. On September 27, 1973, defendant was charged in four separate indictments by the Malheur County grand jury for theft of four separate head of cattle. The trial on the first of these indictments began on December 11, 1973, but ended in a mistrial when a prosecution witness referred to the pending indictments against the defendant.

These four indictments were dismissed on the motion of the state and on January 31, 1974, the state obtained a new indictment containing seven counts of theft of livestock animals. Following this indictment the state, on February 11, 1974, moved to disqualify the trial judge for prejudice. ORS 14.260. The trial judge refused to recuse himself, and the state filed a petition for writ of mandamus with the Supreme Court. On December 31, 1974, while a referee appointed by the Supreme Court was taking evidence pertaining to the writ of mandamus, the Supreme Court disallowed the petition because of a defect in the affidavit accompanying the motion for change of judge. *State ex rel Yraguen v. Dorroh,* 270 Or 834, 530 P2d 29 (1974).

On February 14, 1975, the state filed a second motion for change of judge purportedly correcting the defect the Supreme Court found in the first motion and affidavit. The trial judge also denied this motion on April 24, 1975. The state responded with a second petition for writ of mandamus which was denied by the Supreme Court without opinion on August 6, 1975. At this point nearly 23 months had elapsed since the defendant was originally indicted.

On October 3, 1975, the defendant orally moved for dismissal of the indictment for lack of speedy trial. The motion was denied on October 28, 1975. Trial was

[ 753 ]

set for December 9, 1975, but was continued to January 14, 1976, on motion of the defendant.

On the day before trial was to begin the defendant filed a motion for dismissal on the ground his right to a speedy trial had been denied and at the same time moved for a continuance. The court held a hearing on the motion for dismissal at which the defendant and his wife testified. The motion for dismissal was denied and the defendant immediately filed a notice of appeal in the circuit court. At this time there was a discussion before the court as to whether the denial of the dismissal was an appealable order and whether filing a notice of appeal would stay the circuit court proceeding. The court, over the state's objection, removed the case from the trial docket pending defendant's appeal.

Defendant's appeal was dismissed by this court on the motion of the state on March 11, 1976. The defendant failed to timely file a petition for review in the Supreme Court, but on May 21, more than two months after dismissal of his appeal by this court, he moved for relief from default in the Supreme Court. His motion was granted but the Supreme Court denied his petition for review on the merits.

The state moved to have the case set for trial on January 22, 1976, April 8, 1976, and June 8, 1976. On June 28, 1976, the defendant moved for a change of judge and for a change of venue. The motion for change of venue was allowed and the case was transferred to Multnomah County.

On August 13, 1976, the defendant moved in the Multnomah County Circuit Court for dismissal of the indictment on the ground he was denied a right to speedy trial. The motion was granted and the state appeals.

In determining whether a defendant has been denied a constitutional right to speedy trial we have adopted the analytical framework suggested by the United States Supreme Court in *Barker v. Wingo,* 407

US 514, 92 S Ct 2182, 33 L Ed 2d 101 (1972); *State v. Ivory,* 278 Or 499, 564 P2d 1039 (1977); *State v. Koennecke,* 29 Or App 637, 565 P2d 376 (1977). This analytical framework involves balancing the particular circumstances of the case at issue as they relate to (1) the length of delay, (2) reasons for the delay, (3) defendant's assertion of his right, and (4) prejudice to defendant arising from delay of trial.

### (1) Length of Delay

■ The length of delay is a triggering mechanism to determine if further analysis is required. A delay of approximately three years is sufficient to require further inquiry. *See State v. Ivory, supra.*

### (2) Reasons for the Delay

■ The first four months were consumed by the first set of indictments and the first trial which ended in a mistrial. Defendant intimates in his brief the mistrial was provoked by the district attorney in order to obtain another indictment more to his liking. Although the mistrial resulted from a statement during the testimony of a state's witness the record does not support an inference it was intentional. The district attorney candidly admitted, during argument on the motion to dismiss, that he was pleased to take advantage of the mistrial to consolidate the charges in one indictment and to add the additional charges. This is not intentional misconduct on the part of the prosecutor to provoke a delay for tactical advantage. The period of time through the first trial was not an unreasonable delay. The state, however, must be charged with the delay necessary to obtain a new indictment. This was a period of approximately 50 days.

■ The next 19 months were taken up by the state's two motions for change of judge and the petitions for writs of mandamus. The state has a right to move for a change of judge pursuant to ORS 14.260, and the right to appeal an adverse ruling on the motion. Generally,

periods of time necessary for appeal are deemed permissible delays. *See Harrison v. United States,* 392 US 219, 88 S Ct 2008, 20 L Ed 2d 1047 (1968); *United States v. Bishton,* 463 F2d 887 (DC Cir 1972); *State v. Koennecke, supra.* However, the state's right to pursue proper appeals may come into conflict with its obligation to expeditiously try a criminal defendant.

■ In *Barker v. Wingo, supra,* the trial was continued on 16 separate occasions on motion of the state so the codefendant could be tried and thus be available to testify in Barker's trial. Concerning this delay the Supreme Court said:

> "* * * Perhaps some delay would have been permissible under ordinary circumstances, so that Manning [the codefendant] could be utilized as a witness in Barker's trial, but more than four years was too long a period * * *." 407 US at 534.

Thus, even a permissible delay caused by the state may become oppressive after a period of time.

Here the proceeding pursued by the state to disqualify the trial judge did not involve the defendant and only collaterally involved the issues posed by the indictment. This period of delay of 19 months must be weighed heavily against the state particularly since the defendant was in essence a third party observer of the proceedings at that point.

■ The ensuing delays in trial following dismissal of the second writ of mandamus by the Supreme Court are attributable to the defendant. The defendant cannot take advantage of delays caused by his own conduct whether or not the delays were justified.

### *(3) Defendant's Assertion of his Right*

■ Defendant did not assert a right to speedy trial until after the second petition for writ of mandamus was denied, more than 22 months after the original indictment. He filed two additional motions for dismissal, the final motion being the basis of this appeal. Failure to assert a right to speedy trial is not consid-

ered a waiver of the right. *Barker v. Wingo, supra.* However, the defendant's assertion of or failure to assert his right to a speedy trial is one factor to be considered in an inquiry into deprivation of that right. In determining the value of this factor in the balancing process the court should weigh the frequency and force of the assertion and the reasons ascribed for not asserting the right earlier.

■ During oral argument before the Multnomah County Circuit Court on the motion to dismiss, defendant's counsel said he did not file a motion for speedy trial prior to resolution of the mandamus proceedings because the Malheur County Circuit Court had said " '[n]othing [was] going to happen' " until the Supreme Court ruled on the state's petition. The defendant could have filed a motion for prompt trial or a motion to dismiss during this period. However, such motion could not have been considered by the circuit court. The judge, who was the respondent in the state's petition for writ of mandamus, was foreclosed from considering any matters connected with the case until the Supreme Court determined whether he should be disqualified. The motions could not have been heard by another judge since this would be in effect allowing a change of judge, the very issue the Supreme Court was considering. We conclude it was not unreasonable for the defendant to postpone his assertion of a right to speedy trial until the mandamus proceedings had been concluded. It follows we do not read defendant's failure to assert his right earlier as acquiescing in the delay produced by the state's mandamus petitions.

### (4) Prejudice to the Defendant

This case has not yet gone to trial so we are not able to determine the issues involved or defendant's theory of defense. From the statements of counsel and the testimony during the various arguments on the motion to dismiss, it appears the issues are quite complex and involve, inter alia, allegations the defendant altered brands on cattle which came into his possession over a

period of time prior to August, 1973. The defendant had a large cattle raising operation in eastern Oregon that involved at times 2500 head of cattle. He bought and sold cattle on many occasions.

The defendant and his wife testified during his second motion for dismissal on speedy trial grounds heard in the Malheur County Circuit Court. A transcript of this testimony was considered by the Multnomah County Circuit Court in the proceeding upon which this appeal is based. The defendant testified he was 62 years old, that he had suffered two head injuries prior to the first trial and a third head injury after the second indictment was returned. As a result of his head injuries he has difficulty in recalling names and remembering details of the various cattle transactions in which he has engaged. He stated some of the persons who worked for him in branding and moving cattle were itinerant cowboys and he is having difficulty because of lapse of time and faulty memory in locating them as witnesses. It was stipulated, during argument on the motion, a witness who would be called by the state had become mentally incompetent since the first trial and would be unable to testify. The defendant asserts this witness would be favorable to his defense.

Defendant's wife testified she kept the records involved in buying, selling and branding cattle. In July, 1975, a fire destroyed their home and burned the records she kept regarding the cattle with the exception of one diary, which she had previously given to their attorney. The destroyed records included books in which the brands of individual cattle were recorded and transportation slips showing the movement of the cattle.

The state argues the first trial involved the same charge and the same cattle and if defendant was prepared for trial in 1973, the same preparation would apply to defense of the second indictment in a subsequent trial. The state asserted, during argument on

the motion, that complete discovery had been accorded to defendant prior to the first trial and the defendant was thus aware of all the cattle the state contended were involved in the theft. The state concludes the defendant could then have been aware what records would be material to his defense and presumably all relevant records would be in possession of defendant's attorney.

There is no evidence in the record as to what the attorney for defendant had in his possession other than the one diary recording portions of the cattle transactions in 1973. The record does disclose that a brand record book and transportation slips were destroyed. The records of cattle sales, branding and cattle movement would be of critical importance to the defense.

■ The Malheur County Circuit Court in ruling on the second motion for dismissal concluded:

> "* * * I must deny the Motion To Dismiss based upon the grounds that he has not had a speedy trial. I'm also going to deny the Motion To Dismiss upon the grounds that his undue delay has prejudiced the defendant's rights to his defense in this case. There is no doubt in my mind that this period of time has dimmed the defendant's recollection of the events that occurred prior to the time the first indictment was tried. Also there is no doubt in my mind that this fire that occurred in July of 1975 could very possibly have prejudiced the defendant's defense of this case by the burning of all of his records. * * *"

The Multnomah County Circuit Court in granting the motion to dismiss stated:

> "I am satisfied that there is probable prejudice to the defendant from the lapse of time, perhaps in losing witnesses or in losing his records, whatever they might have been. * * *"

Although the conclusion by the Multnomah County Circuit Court is diluted somewhat by the choice of words we deem it a finding the defendant was preju-

diced in the loss of witnesses and records. The Supreme Court in *State v. Ivory, supra,* said:

> "It should also be noted that each of the *Barker* factors involves primarily factual inquiries, so that the decision of the trial court granting a dismissal is entitled to great weight." (Citations omitted.) 278 Or at 508, n 7.

We conclude the defendant has shown a reasonable possibility of prejudice due to the delay in bringing the case to trial. *See State v. Ivory, supra.*

In balancing the four factors suggested in *Barker v. Wingo,* supra, we conclude the length of delay of three years is extraordinary and weighs in favor of defendant's claim. The reason for the period of delay to obtain a second indictment and during the Supreme Court mandamus proceedings likewise weighs in defendant's favor. He made a timely assertion of his right and has shown a reasonable possibility of prejudice from the delay. The motion for dismissal was properly granted.

Affirmed.