Heard, and plaintiff-relator remanded to
custody September 11; disposition explained October 2, 1979

In the Matter of the Application
of Richard Kimball Knutson for a
Writ of Habeas Corpus

## RICHARD KIMBALL KNUTSON,
*Plaintiff-Relator,*

*v.*

## CUPP

*Defendant.* (SC 26465)

601 P2d 129

Plaintiff-relator appeared and argued *in propria persona.*

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for defendant.

Before Denecke, Chief Justice, Tongue, Howell, Lent, Linde, and Peterson, Justices.

LENT, J.

ˈ

**LENT, J.**

This is an exercise of original jurisdiction in a habeas corpus proceeding. Or Const Art VII (Amended), § 2. This court issued a writ of habeas corpus to the defendant on September 7, 1979, and pursuant to the writ defendant produced plaintiff-relator before this court on September 11, 1979. The court inquired into the cause of plaintiff-relator's imprisonment and, finding that plaintiff-relator was legally detained in the custody of the defendant, the court ordered that plaintiff-relator be remanded to that custody. ORS 34.600. This opinion is in explanation of the court's disposition of the matter.

On March 26, 1979, a circuit judge in Lane County sentenced defendant to concurrent terms of imprisonment upon his conviction of several felonies. Upon defendant's motion the trial judge on July 2, 1979, set "bail on appeal" in the sum of $50,000. ORS 135.285(2) and 135.250(2).

Without executing and filing with the clerk of the court a "release agreement" defendant sought to procure his release from custody, pending disposition of his appeal, by filing with the clerk of the trial court a document denoted "Personal Surety Bond" (hereinafter "Bond").[1] Upon the State of Oregon's objection to

---

[1] The text of the Bond and the affidavit were as follows:

"I, ADELLE RUBY BALKEMA, as surety do hereby undertake that I will pay to the Circuit Court of the State of Oregon in the above matter the sum of $50,000 if the Defendant, Richard Kimball Knutson fails to make any appearances required of him in the above entitled matter on the conviction of Conspiracy to Manufacture Dangerous Drugs, Illegal Possession of Dangerous Drugs and Illegal Possession of Narcotics on the 26th day of March, 1979.

"If the Defendant faithfully performs all of his obligations and makes all appearances as required pending this appeal, this bond shall be void, otherwise, it shall remain in full force and effect."

(Affidavit Form A):

"I, Adelle Ruby Balkema, first being duly sworn, depose and say as follows:

release upon this Bond the circuit court judge sustained the state's objection and further ordered "that bail be posted, if at all, through a corporate bond or by the use of two sureties who independently justify." By these habeas corpus proceedings plaintiff-relator challenges the validity of this order of the circuit court denying his release. The first issue is whether one may be released from custody without executing and filing a "release agreement," and the second is whether this Bond is sufficient as security.

Article I, section 14, of the Oregon Constitution provides:

"Offences, except murder and treason, shall be bailable by sufficient sureties. Murder or treason, shall not be bailable, when the proof is evident, or the presumption strong."

It seems fair to conclude that the constitutional provision contemplated a system of bail familiar to the time of the adoption of the constitution. Such a system was provided in Chapter XXIV of "General Laws of Oregon" (1845-1864) compiled by Deady:

"Sec. 254. Admission to bail is the order of a competent court or magistrate, that the defendant be discharged from actual custody, upon bail.

"Sec. 255. The taking of bail consists in the acceptance, by a competent court or magistrate, of the

---

"I am the mother of Richard Kimball Knutson and make this affidavit in support of my being personal surety for his bail set in the amount of $50,000.00.

"I have a vendor's interest in a land sale contract worth $34,000.00; over $11,000.00 in personal property; and over $60,000.00 in equity in real estate."

(Affidavit Form B)

"I, Adelle Ruby Balkema being first duly sworn on oath depose and say:

"I am a resident of the State of Oregon; I am worth the sum of $105,000.00 over and above all of my debts and liabilities and exclusive of property exempt from exemption (sic)."

It is not clear from the record before us whether only one or both forms of affidavit were submitted to the trial judge, but our remarks in the body of the opinion are applicable to each of the forms.

undertaking of sufficient bail for the appearance of the defendant, according to the terms of the undertaking, or that the bail will pay to the state a specified sum of money.

" * * * * *

"Sec. 267. Bail is put in by a written undertaking, executed by two sufficient sureties, and acknowledged before the court or magistrate taking the same. It may be substantially in the following form:

" * * * * *

"Sec. 269. The qualifications of bail are as follows:

"1. Each of them must be a resident and a householder or freeholder within the state; but no counselor or attorney, sheriff, clerk of any court or other officer of any court, is qualified to be bail.

"2. They must each be worth the sum specified in the undertaking, exclusive of property exempt from execution, and over and above all just debts and liabilities; but the court or magistrate, on taking the bail, may allow more than two bail to justify severally in amounts less than that expressed in the undertaking, if the whole justification be equivalent to that of two sufficient bail.

"Sec. 270. The bail must in all cases justify by affidavit; and the affidavit must state that they each possess the qualifications prescribed by section 269."

Until the 1973 revision of the Code of Criminal Procedure, the statutory scheme remained unchanged in substance in pertinent part. *See* former ORS ch 140, repealed Or Laws 1973, ch 836, § 358.

The 1973 legislature substituted for the traditional "bail" a new framework for release of defendants. This is now codified in ORS 135.230 to 135.290. Release of a defendant may now be upon: (1) personal recognizance, ORS 135.240(3), (2) conditional release, ORS 135.245(4) and 135.260, or (3) security release, ORS 135.245(4) and 135.265.

Plaintiff-relator has advanced no reason that he should not be required to comply with ORS 135.230 to

135.290 in order to procure his release. We therefore turn to what the new statutory scheme requires.

ORS 135.255(1) provides:

> "The defendant shall not be released from custody unless he files with the clerk of the court * * * a *release agreement* duly executed by the defendant containing the conditions ordered by the releasing magistrate or deposits security in the amount specified by the magistrate in accordance with ORS 135.230 to 135.290." (Emphasis added)

The statute could be read to permit release by either executing and filing a release agreement[2] or depositing security in the amount specified. We believe, however, that the subsection must be read in conjunction with ORS 135.265.

Where a defendant has neither been released upon personal recognizance under ORS 135.255 nor has been granted conditional release under ORS 135.260, he may procure his release under ORS 135.265. Subsection (2) of that section requires that he execute a *release agreement* and make a cash deposit to secure the agreement. If he abides by the terms of the agreement, he can receive back a percentage of the money deposited.

If the defendant does not make the deposit described in ORS 135.265(2), he may proceed to procure his release under ORS 135.265(3). That subsection provides:

> "(3) Instead of the security deposit provided for in subsection (2) of this section the defendant may deposit with the clerk of the court an amount equal to the security amount in cash, stocks, bonds, or real or personal property situated in this state with equity not exempt owned by the accused or sureties worth double the amount of security set by the magistrate. The stocks, bonds, real or personal property shall in all cases be justified by affidavit. The magistrate

---

[2] " 'Release agreement' means a sworn writing by the defendant stating the terms of the release and, if applicable, the amount of security." ORS 135.230(5).

may further examine the sufficiency of the security as he considers necessary."

Subsection (3) is not without its ambiguities, but we believe that it contemplates that the "security deposit" may be made by the defendant "or sureties" who are willing to aid him. The official commentary would so indicate:

"Subsection (3) allows the defendant to deposit cash, stocks, bonds, real or personal property in lieu of the 10 percent cash deposit. The property deposited could be cash in the full amount of the security, or stocks, bonds, real estate, or any other property of ascertainable value. The property so deposited must be justified by affidavit and the magistrate may examine the degree and form of ownership of the property as he considers necessary.

"The requirement that sureties be worth double the amount of security set means that if a person deposits $5,000 for the defendant, he must be worth $10,000. If the defendant were to deposit the $5,000 from his own assets, he does not have to be worth twice the amount. The reason for this requirement is to prevent bankrupting a surety and therefore jeopardizing the security deposited with the court."

Page 143, "Proposed Oregon Criminal Procedure Code, Final Draft and Report - November 1972" of the Criminal Law Revision Commission. Nothing in subsection (3) dispenses with the subsection (2) requirement of a release agreement.

■ ■ We hold that no one may be released from custody without executing and filing with the clerk of the court a release agreement. Since this plaintiff-relator did not do so, he was not entitled to release.

■ Because, however, the proceedings for release in the circuit court centered around the sufficiency of the "security" tendered by way of the Bond, we are of a mind to comment upon the adequacy of this Bond, in particular, and such a device, in general, to meet the requirements of ORS 135.230 to 135.290.

The Bond tendered appears to be an attempt to furnish a document of the kind formerly statutorily prescribed. Former ORS 140.100 set forth forms for bail (the written undertaking): (1) before indictment, (2) after indictment and before judgment, and (3) upon an appeal. We find nothing is to be gained by pointing out in detail how the Bond here tendered failed to meet the formerly prescribed forms. It suffices to say that it would have been insufficient, on its face, to meet the requirements of any of the three forms; in particular, it was insufficient to meet the statutory prescription for an undertaking upon an appeal.

■ Moreover, it failed to be executed by *two* sureties, former ORS 140.100; it failed in the form of acknowledgment, former ORS 140.110; it failed in the form and substance of justification, former ORS 140.120 and 140.130. The Bond tendered was insufficient to satisfy the kind of statutory scheme familiar to the drafters of the Oregon Constitution.

■ If, in the alternative, this Bond was intended to meet the requirements of ORS 135.265(3), it fell short. There was no *deposit with the clerk* of the court of any of the kinds of personal property described in the statute. There was no *deposit with the clerk* of court of real property. One may well wonder just how the legislature expected real property to be deposited.[3] It is an obvious physical impossibility to deposit land (and/or its improvements), and the deposit of the evidence (*e.g.,* a deed) of one's ownership of one or more interests in realty could mean little in the way of security for defendant's release agreement.

It appears from the legislative history that the 1973 security release system was patterned after that of the State of Illinois. That state's system has an elaborate procedure for making the required deposit, and a

---

[3] Of course, "stocks" cannot be deposited either. We assume the statute refers to certificates of stock or to due bills or other forms of evidence of the ownership of stock. The degree of security is questionable, for one can sell his "stocks" without having the certificates.

preliminary draft of the 1973 code prepared by the Criminal Law Revision Commission of this state was comparable; however, those provisions were eliminated from the legislation to provide the magistrate with more flexibility in fashioning an adequate deposit of security to secure the release agreement.

In any event, the bond and affidavit of the purported surety before us completely fails to amount to a *deposit with the clerk* of court of any property; accordingly, it fails to satisfy the statutory requirements and is insufficient.

We do not have before us an attempt to meet the requirements of the order of the trial judge for bail by a corporate surety bond or the "use of two sureties who independently justify" and, consequently, we express no opinion as to whether such a bond would satisfy the law of this state.

The prisoner has been remanded, and no other disposition is presently required of us.