Argued and submitted June 25, plaintiff remanded to
custody of defendant November 4, 1980

## In the Matter of the Application of
## Lionetti Anita Haynes for a Writ of Habeas Corpus.

### HAYNES,
*Plaintiff,*
*v.*
### BURKS,
*Defendant.*

### (TC 78-1763, SC 27083)

619 P2d 632

Douglas L. Melevin, Eugene, argued the cause and filed a brief for plaintiff.

Brian R. Barnes, Deputy District Attorney, argued the cause for defendant. With him on the brief was J. Pat Horton, District Attorney for Lane County.

LINDE, J.

**LINDE, J.**

Plaintiff was arrested on March 13, 1978 and indicted on March 16, 1978, on a charge of murder. For the two and one-half years since her arrest she has been held in the Lane County jail awaiting trial. Her motions to be released on appropriate security were denied on October 6, 1978 and August 30, 1979, and a motion to dismiss or alternatively to set security was denied on February 21, 1980. In the present habeas corpus proceeding, plaintiff asks to be released from imprisonment on two grounds, claiming first that the denial of a security release contravened the governing law, and second, that she has been denied a speedy trial and is entitled to have the charge against her dismissed.[1] The two issues are related as set out below.

I. *The governing legal standards.*

*Security release.* The detention of a defendant pending trial is governed by ORS 135.230 to ORS 135.295 and ORS 135.750, within the limits imposed by article I, section 14 of the constitution. A charge of murder is an exception to the general rule that all defendants "shall be released" upon personal recognizance, conditional release, or deposit of security. *See Knutson v. Cupp,* 287 Or 489, 601 P2d 129 (1979). ORS 135.240 provides:

"(1) Except as provided in subsection (2) of this section, a defendant shall be released in accordance with ORS 135.230 to 135.290.

"(2) When the defendant is charged with murder or treason, release shall be denied when the proof is evident or the presumption strong that the person is guilty.

"(3) The magistrate may conduct such hearing as he considers necessary to determine whether, under subsection (2) of this section, the proof is evident or the presumption strong that the person is guilty."

___

[1] ORS 34.310 provides that "[e]very person imprisoned or otherwise restrained of his liberty [except under a judgment or decree] may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment or restraint, and if illegal, to be delivered therefrom." Apart from the statute, the constitution guarantees the privilege of the writ of habeas corpus, Or Const art I, §23, and gives this court original jurisdiction to issue the writ. Or Const art VII(am), §2. The court has allowed the writ to inquire into the legality of detention upon a refusal of release on security or other appropriate conditions. *See Owens v. Duryee,* 285 Or 75, 589 P2d 1115 (1979), also citing the unreported 1978 decision in *Knutson v. Burks,* No. 25680, 285 Or at 80. *Accord Richardson v. Mason,* No. 24720 (file #1344) (Oct. 8, 1976).

The exception in subsection (2) essentially restates the constitutional rule.[2]

■    Shortly before the statutory revision of release procedures in 1973, this court examined the question of denying bail upon "evident proof" or "strong presumption" of murder. *State ex rel Connall v. Roth,* 258 Or 428, 482 P2d 740 (1971). There defendants charged with murder were admitted to bail when the prosecutor had relied only on the indictment as the basis to deny bail. The prosecutor sought mandamus to set aside the circuit court's orders, but this court dismissed the writ. The fact that a grand jury, in closed proceedings, had been presented sufficient evidence to find probable cause for an indictment was held not to show the level of proof or presumption required to deny bail. Rather, the state's burden is to persuade the magistrate by other competent evidence that the proof or presumption of guilt is evident or strong. 258 Or at 433, 435.

■    The responsibility for evaluating the strength of the state's evidence rests on the court hearing the motion for release. 258 Or at 435.[3] In the course of stating this holding, the *Connall* court quoted from a New Jersey opinion the phrase that the evidence must show "a fair likelihood" that defendant would be convicted of murder. The quoted phrase illustrates the risk of the common temptation to explain one set of adjectives by a different one. The words "strong" and "evident" may be said to demand more than "a fair likelihood." So the revisers of the release statutes concluded. The original draft of ORS 135.240 proposed to include the *Connall* phrase "when circumstances indicate a fair likelihood of conviction," but this was deleted as inconsistent with the constitutional test. *See*

---

[2] Or Const art I, §14:

"Offences (sic), except murder, and treason, shall be bailable by sufficient sureties. Murder or treason, shall not be bailable, when the proof is evident, or the presumption strong."

[3] In the *Connall* opinion the word "discretion" appears in describing the hearing court's responsibility, but this responsibility is really the judicial one of evaluating the strength of the state's proof rather than the exercise of discretion. The law does not leave a court discretion to release a defendant charged with murder when the proof of guilt is "evident or the presumption strong," nor to deny release when the proof, though sufficient to go to trial, falls below this standard. *Compare* ORS 135.285(2) ("discretionary" release pending appeal after conviction.)

Snouffer, *An Article of Faith Abolishes Bail in Oregon,* 53 Or L Rev 273, 281-282 (1974) and sources cited in note 69. The likelihood of guilt must be more than "fair," it must be "strong," before release can be denied under ORS 135.240(2). It must, of course, be guilt specifically of murder, not merely of some degree of culpable homicide. While for this purpose guilt need not be shown "beyond a reasonable doubt," as it must for conviction, the evidence should at least be clear and convincing. *See* Thaler, *Punishing the Innocent: The Need for Due Process and the Presumption of Innocence Prior to Trial,* 1978 Wisc L Rev 441.

*Trial delay.* Three different sources place legal limits on the lapse of time before a defendant must be tried. Their relationship among themselves and with the law governing pretrial detention is complex.

The criminal code commands expeditious prosecution. Once a suspect is held to answer for a crime, an indictment or information must be filed within 30 days or risk dismissal of the prosecution for delay. ORS 135.745. Once charged, a defendant "whose trial has not been postponed upon his application or by his consent" must be tried "within a reasonable period of time" or the court must dismiss the accusatory instrument. ORS 135.747. If sufficient reasons are shown for a failure of timely action under the preceding provisions, then the court may order a continuance and release the defendant from custody "as provided in ORS 135.230 to 135.290." ORS 135.750. In many cases application of these rules will satisfy constitutional requirements and obviate any constitutional issue. However, the statutes allow a new prosecution if the charge dismissed for delay was a felony or Class A misdemeanor. ORS 135.753(2).[4] And the release during continuance prescribed by ORS 135.750 is not available to a murder defendant when the facts meet the statutory and constitutional standard stated above. He or she will be released only when an unreasonable delay leads to an order of dismissal.

---

[4] ORS 135.753(2):

"An order for the dismissal of a charge or action, as provided in ORS 135.703 to 135.709 and 135.745 to 135.757, is a bar to another prosecution for the same crime if the crime is a Class B or C misdemeanor; but it is not a bar if the crime charged is a Class A misdemeanor or a felony.

■ ■ The constitutional standards governing trial delay are found in article I, section 10, of Oregon's Constitution and in the "speedy trial" guarantee of the federal sixth amendment, part of the due process required of states under the fourteenth amendment.[5] In some respects these provisions are not identical. The Oregon Constitution commands that "justice shall be administered . . . without delay" in all proceedings, not only in criminal prosecutions. *See Hooton v. Jarman Chevrolet Co.,* 135 Or 269, 293 P 604, 296 P 36 (1931). Also, unlike the sixth amendment, article I, section 10, states not a "right" of the accused but a mandatory directive not within the disposal of the parties, a difference that can bear on the enforcement of the constitutional command. *State ex rel Oregonian Pub. Co. v. Deiz,* 289 Or 277, 613 P2d 23 (1980).[6] "Contrary to the rule in most of the jurisdictions of the country, this court has consistently held that it is not incumbent upon the accused to demand a trial or take affirmative action to enforce his right to a speedy trial." *State v. Vawter,* 236 Or 85, 87, 386 P2d 915 (1963). But the conditions of an unconstitutional "delay" in a criminal prosecution do not differ materially from the denial of a "speedy trial" under the sixth amendment. *State v. Ivory,* 278 Or 499, 564 P2d 1039 (1977).

■ As stated in *Ivory,* a decision under either standard involves consideration of a number of circumstances or "factors" which have been identified in past decisions of this court and of the United States Supreme Court under the sixth amendment. As brought together in *Barker v. Wingo,* 407 US 514, 92 S Ct 2182, 33 L Ed 2d 101 (1972), for purposes of that amendment, they include the length of the delay, the reason for the delay, the prejudicial consequences of the delay, and the evidence of concern about these consequences shown by defendant's assertion of a

---

[5] US Const amend 6: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, . . ." US Const amend 14: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . ." *Klopfer v. North Carolina,* 386 US 213, 87 S Ct 988, 18 L Ed 2d 1 (1967).

[6] Obviously a timely trial protects societal interests beyond those of the accused, particularly when the accused is at large. *See, e.g.,* the remarks of Professor Herman Goldstein in the 1965 Proceedings of the National Conference on Bail and Criminal Justice, 152-153, quoted in Kamisar, LaFave & Israel, Modern Criminal Procedure 1114-1115 (5th ed 1980); *Barker v. Wingo,* 407 US 514, 519-520, 92 S Ct 2182, 33 L Ed 2d 101 (1972).

demand for trial. 407 US at 530-532. There these elements or "factors" of decision are stated in the current formula of "balancing," but the metaphor should not be taken too literally. We know no scales that provide a common denominator for the "weight" of an extra month's pretrial imprisonment and the "weight" of prosecution neglect, or good faith necessity, or deliberate delay. The point of the formula is that all relevant criteria be examined and none overlooked or ignored. *State v. Ivory,* 278 Or at 505. The proper disposition in the individual case is not a question of addition and subtraction but of examining the relevance of each element in giving effect to the constitutional guarantee.

■ It is apparent that different factors are important to the substance of the constitutional command and to the remedy of dismissal. As already stated, Article I, section 10, addresses the administration of justice and protects interests of the public as well as the rights of defendants. Thus, whether there has been compliance with the constitutional injunction against "delay" does not itself depend on prejudice to the defendant. Nor does it depend on defendant's demand for a trial. *State v. Vawter, supra.* Compliance as such depends on the length of the delay and the reasons for it. Some cases involve longer periods of preparation and pretrial procedures than others. Even with such reasons, no doubt the passage of time alone can eventually lengthen to unconstitutional dimensions. *See State v. Ivory,* 278 Or at 506. But short of this, a failure to bring a defendant to trial is a "delay" of justice when it has no reason other than neglect, procrastination, or deliberate choice.

■ The urgency of a speedy trial becomes greater when the accused is jailed while awaiting trial. Both constitution and code recognize pretrial imprisonment itself, sometimes necessary, to be a heavy burden on one not convicted of crime, apart from its possible consequences for the accused's job, or family and community relationships, or her physical or psychological health. ORS 135.230 to ORS 135.290, Or Const art I, § 14 *supra. See* Thaler, *supra,* 1978 Wisc L Rev at 450-459, and sources cited therein. Thus pretrial imprisonment bears on the length of the "reasonable time" to bring the accused to trial, ORS

135.747, or the constitutionally impermissible "delay," article I, section 10, even apart from a prejudicial impact on the accused's defense. Similarly, a significant possibility that delay will impair the defense[7] increases the urgency of speedy trial even when the accused is not in custody. Obviously, that urgency is at its highest when both pretrial imprisonment and possible impairment of the defense coincide.

■ *Remedies.* This case differs from the usual appeal claiming a denial of a speedy trial because it comes to us before trial. This requires a more differentiated consideration of the element of prejudice than is true in the decision of such appeals. For on appeal from a conviction, the question of prejudice resulting from the delay can be examined retrospectively, though perhaps not with absolute certainty, and when a conviction is set aside for that reason, the reason by hypothesis precludes a later retrial. Thus a reasonable possibility that delay *will* impair the defense is the proper *prospective* test for deciding that a case must proceed to trial, while a *retrospective* claim that a conviction must be reversed for delay reasonably calls for showing a more concrete likelihood that the delay was prejudicial to the defense.

■ In a federal appeal under the sixth amendment, the United States Supreme Court has stated that "dismissal must remain, as Barker noted, 'the only possible remedy.' " *Strunk v. United States,* 412 US 434, 440, 93 S Ct 2260, 37 L Ed 2d 56 (1973). This is true when one element rendering the delay unconstitutional is prejudice to the accused's ability to defend himself, and perhaps also when dismissal is invoked against purposeful delay by the government even when no actual prejudice is shown. *State v. Ivory,* 278 Or at 506. The quoted statement in *Strunk* has been criticized as overly broad. Amsterdam, *Speedy Criminal Trials: Rights and Remedies,* 27 Stan L Rev 525 (1975).[8]

---

[7] *State v. Ivory,* 278 Or at 506-507, quoting from *United States v. Ewell,* 383 US 116, 120, 86 S Ct 773, 15 L Ed 2d 627 (1966); *Moore v. Arizona,* 414 US 25, 26, 94 S Ct 188, 38 L Ed 2d 183 (1973).

[8]

"On its face, this proposition is incredible. Anglo-American law has long provided remedies for denial of a speedy trial other than dismissal of the

Short of the kind of prejudice, extreme delay, or purposeful prosecution obstruction for which the Supreme Court would require dismissal, there is no reason why pretrial remedies should not include mandatory orders, as in *State ex rel Oregonian Pub. Co. v. Deiz, supra,* or release under ORS 135.750, if continued custody is the element that renders further delay unconstitutional, or dismissal without prejudice, as provided in ORS 135.745 and 135.747.

■ In sum, Oregon law requires trial "without delay" and provides for the dismissal of the accusatory instrument if a defendant, without his application or consent, is not brought to trial "within a reasonable period of time." Upon sufficient reasons, the court may substitute a continuance and release from custody.

■ ■ These standards and remedies apply in advance of a constitutional issue. If they did not apply to a delay short of a constitutional violation requiring final dismissal, the statutory provisions for a dismissal subject to renewal of the prosecution would be meaningless. However, prolonged pretrial imprisonment, which can result from denial of release in a murder case when the proof is strong, shortens the constitutionally permissible measure of delay. And insofar as the statutory dismissal of charges does not bar renewed charges in the case of serious crimes, it may not be

---

prosecution with prejudice. State and lower federal courts enforcing sub-constitutional speedy-trial guarantees have frequently found other remedies appropriate; and both lower courts and the Supreme Court have enforced the sixth amendment by other means. Surely, the primary form of judicial relief against denial of a speedy trial should be to expedite the trial, not to abort it. Where expedition is impracticable for some reason, the Supreme Court's repeated recognition of the several distinct interests protected by a right to speedy trial suggests the propriety of fashioning various remedies responsive to the particular interest invaded in any particular case. If the sole wrong done by delay is 'undue and oppressive incarceration prior to trial,' the remedy ought to be release from pretrial confinement; if prolongation of the 'anxiety' and other vicissitudes 'accompanying public accusation' is sufficiently extensive, the remedy ought to be dismissal of the accusation without prejudice; and it is only when delay gives rise to 'possibilities [of impairment of] . . . the ability of an accused to defend himself,' or when a powerful sanction is needed to compel prosecutorial obedience to norms of speedy trial which judges cannot otherwise enforce, that dismissal of a prosecution with prejudice is warranted."

27 Stan L Rev 534-535 (footnotes omitted).

an adequate remedy when the delay reaches unconstitutional dimensions.

## II. *Application to this case.*

*The denial of release.* Plaintiff's claims for release for denial of a speedy trial and for lack of an evidentiary basis that would preclude a security release are related insofar as her continued detention bears on the "reasonable time" to bring her to trial. We deal with them separately.

■　　Plaintiff first contends that she was and is entitled to be released on appropriate security because the proof of her guilt is not so strong as to preclude this. The circuit court's order denying plaintiff's release relied on evidence that the same judge had previously heard in an omnibus hearing under ORS 135.037, and the parties have made the transcript of these several hearings part of the record on habeas corpus. As stated above, primary responsibility for evaluating the strength of the state's evidence rests on the court hearing the motion for release, and this conclusion must reflect the correct standards both as to the command of that section and as to the evidence to be considered.

Plaintiff claims that the circuit court's original order in October, 1978, applied the wrong standard when it refused to set security on a finding "that the circumstances presented at the omnibus hearing indicate that the defendant is in danger of being convicted of murder." The state concedes that this finding contains "unfortunate language," but it contends that the court later corrected the error. The difference between the *Connall* phrase and the statutory and constitutional test, discussed above, was brought to the circuit court's attention when plaintiff renewed her motion to set security in July, 1979. In ruling on this motion on August 27, 1979, the court agreed that the statute requires more than a likelihood of conviction to preclude pretrial release and went on to state that "more than just a fair likelihood" had been shown. This was stated in terms of a probable jury verdict rather than the court's independent assessment of the strength of the evidence that the statute calls for. However, this discrepancy is not decisive on this phase of the case.

■ The case is not before us on appeal from the circuit court, and the question is not one of error as such. Nor has plaintiff sought a writ of mandamus, as in *State ex rel Ricco v. Biggs,* 198 Or 413, 255 P2d 1055 (1953).[9] On a writ of habeas corpus, when the prisoner is held under an order of the court, the question is whether it appears from the order itself or from undisputed facts that her imprisonment was unlawful or in the course of events has become so. ORS 34.610 (in this case, subsection (2));[10] *Owens v. Duryee,* 285 Or 75, 589 P2d 1115 (1979).

■ That is not the case here. Although there may be some doubt of the circuit court's legal premises, as stated above and as will be mentioned later, this does not appear from the order itself. As to the strength of the evidence of plaintiff's guilt, the facts are not undisputed. From our own examination of the stipulated record, we cannot say that a judge could not reasonably consider the evidence of plaintiff's guilt to be strong. Accordingly, plaintiff is not entitled to release under the writ of habeas corpus on this issue.

---

[9] In that case, the court issued a writ of mandamus, normally not available to control a discretionary act, to order a change of venue which the circuit court erroneously believed it had no legal authority to make. This court ordered that a change of venue be made rather than that the circuit court exercise its discretion, because the defendant judge "has indicated his purpose to stand on his demurrer" to the petition. 198 Or at 434-435.

[10] ORS 34.610:

"If it appears on the return that the prisoner is in custody by virtue of an order or civil process of any court legally constituted, or issued by an officer in the course of judicial proceedings before him, authorized by law, such prisoner shall be discharged only if one of the following cases exists:

"(1) The jurisdiction of the court or officer has been exceeded, either as to matter, place, sum or person.

"(2) The original imprisonment was lawful, yet by some act, omission or event which has taken place afterwards, the party has become entitled to be discharged.

"(3) The order or process is defective in some matter of substance required by law, rendering the same void.

"(4) The order or process, though in proper form, has been issued in a case not allowed by law.

"(5) The person having the custody of the prisoner under such order or process is not the person empowered by law to detain him.

"(6) The order or process is not authorized by any judgment or decree of any court, nor by any provision of law."

■    *The speedy trial claim.* As stated in Part I, we examine, first, whether there has been unreasonable delay, and if so, whether by virtue of prejudice to the defense or deliberate obstruction by the state the remedy must be a final dismissal of the prosecution. Ultimately the answer depends in part on whether it is certain that plaintiff cannot be released. That answer cannot be given with finality on the present record.

Plaintiff has been jailed continuously for two and one-half years while awaiting trial. That is on its face an extraordinary length of time to wait for a "speedy trial," unless, of course, plaintiff herself is responsible for much of the delay. This is an issue because a significant part of the time has been occupied with an appeal taken by the state from the suppression of certain evidence ordered at the omnibus hearing.

The pertinent dates are the following:

Plaintiff was arrested on March 13, 1978, and indicted on March 16, 1978. On the same day, she filed a motion for an omnibus hearing pursuant to ORS 135.037, demanding the suppression of allegedly inadmissible evidence against her. The hearing was held on June 22 to June 29, 1978, and continued on defendant's motion until September 7, 1978. Meanwhile, two trial dates had been set in July, 1978, and postponed for a mental examination of the accused.

On September 11, 1978, the circuit court ordered the suppression of some of the state's evidence, in particular, videotapes of a reenactment of the crime by the other two defendants "and evidence directly related to the showing of the videotapes."[11] On September 14, the state filed notice of appeal of the suppression order under ORS 138.060. While an accused has no direct appeal from an adverse order, ORS 138.060 provides for a cross-appeal when the state appeals, and plaintiff filed such a cross-appeal on October 11, 1978.

The Court of Appeals decided the appeal nine months later, on July 30, 1979. Its conclusion was that

---

[11] The nature of the disputed evidence and the court's order are set forth in *State v. Haynes,* 41 Or App 321, 597 P2d 1297 (1979).

because of "critical inadequacies and ambiguities" in the circuit court's order, the court could not "review the critical portions of the order because we cannot understand them." *State v. Haynes,* 41 Or App 321, 328-329, 597 P2d 1297 (1979). It therefore remanded those parts of the order to the circuit court for clarification, affirming the rest. Plaintiff petitioned this court for review of that decision, which was denied on October 16, 1979.

On November 26, 1979, the circuit court amended its previous order of suppression but again suppressed the videotapes and evidence relating thereto. The state again appealed this order on December 21, 1979, with a cross-appeal by the accused filed on January 18, 1980. This appeal was argued in the Court of Appeals on June 23, 1980, and has not been decided. Meanwhile, on February 15, 1980, the circuit court held another hearing on plaintiff's motion to dismiss the prosecution or in the alternative to release her. It denied the motion on February 21, 1980.

It is apparent from this sequence of events that the first six months, until September 14, 1978, were occupied primarily with proceedings on defense motions, including the omnibus hearing. For the two years since that date the trial of the charge against plaintiff has awaited the disposition of the state's appeal from the circuit court's suppression order. If apart from the appeal there might have been other reasons for delay, the record does not show them.

The state does not squarely claim in this court that plaintiff has herself to blame for this delay because she triggered the proceeding by her motion to suppress, and we decline such a holding.[12] Rather, the state asserts that

---

[12] The problem results from the state's simultaneous pursuit of three objectives: (1) The state is committed to bring a defendant to trial without unreasonable delay, an obligation in which the fact of pretrial detention plays a major role; (2) it forbids pretrial release of a defendant charged with murder when there is strong evidence of guilt; and (3) it insists that a defendant's right to the suppression of evidence be raised in advance of trial and permits the prosecution to appeal from an adverse ruling. Legitimate as each objective is by itself, the three will often be incompatible. *Cf. State v. Jenkins,* 29 Or App 751, 565 P2d 758 (1977). The first two are fixed in the constitution (and the right to a speedy trial also in the United States Constitution); the third is only a statutory policy. That statutory policy is open to the state when the appeal can be completed within the limits set by its constitutional obligation to provide a speedy trial. But when the period for satisfying that obligation is shortened by the state's insistence on pretrial imprisonment of the accused, the trial cannot always await the completion of the state's appeal.

plaintiff lengthened the delay on appeal by the time consumed for her notices of cross-appeal, by obtaining extensions of time to file briefs, and by petitioning this court to review the July, 1979 decision of the Court of Appeals. Assuming for purposes of the argument that plaintiff thus is responsible for about 151 days of the appeal period, this still leaves an elapsed time of approximately 19 months since the conclusion of the omnibus hearing that cannot be laid to any request of plaintiff, and seven months since she moved for release or dismissal specifically on grounds of delay.

From the principles discussed previously, it follows that if the accused continues in custody, any further postponement of her trial will no longer be "trial within a reasonable period of time" in the sense of ORS 135.747. That statute requires dismissal of the accusatory instrument without prejudice to a renewed prosecution, ORS 135.753(2), if the accused cannot be either tried or released on security. And any decision on pretrial release, in turn, depends on the circuit court's assessment of the strength of the evidence that she is guilty of murder.

■ As discussed in the preceding section, the circuit court denied plaintiff's request for security release in the belief that this was precluded by ORS 135.240(2). We there explained that the writ of habeas corpus would not be used to look to the reasons behind the court's order as long as the undisputed facts did not show the order to be contrary to law. But this does not preclude the circuit court itself from reexamining that order upon a further consideration of the applicable standards.

■ The stipulated record shows that the court correctly assumed that something less than a trial of the prosecution's entire case was called for. As stated in *Connall,* "[t]he bail hearing is not for a determination of guilt or innocence, but rather a determination of the preliminary issue of the right to bail." 258 Or at 435. Nevertheless, the evidence adduced at the hearing as precluding pretrial release must be sufficient to support a finding that the "proof" is "evident" or gives rise to a "strong" presumption

of guilt.[13] But it is not certain that the court made such a finding entirely on the evidence before it at the hearing. Rather, the judge stated:

"It would appear to me that the hearing for release is rather a broad hearing at which statements made by the District Attorney as to what proof the District Attorney's office feels they may be able to introduce can be taken into consideration by the Court or magistrate."

A prosecutor's assertions about evidence that he "feels" he "may be able to introduce" are not "proof." The magistrate must be shown information at the hearing from which he can make his own independent determination whether there is admissible evidence against an accused that adds up to strong or evident proof of guilt. The same applies to the court's further statement that it took into account the conviction of another defendant, which had been reversed, and the guilty plea of a third. Without an explanation how another person's conviction of a crime could be used against a defendant charged with the same crime, this fact can hardly be part of the "proof" that precludes pretrial release.

To repeat, the question is not one of appellate review for error. Rather it is whether this court can assume that the circuit court has reached an independent judgment that evidence which will be admissible at trial, unless met or explained, so strongly shows the accused guilty of murder that the law forbids her pretrial release on adequate security conditions. In view of what we have said, we are confident that the circuit court would make that judgment upon this proper standard and evidence if a motion for security release were to be renewed.

■ As previously noted, plaintiff's continued detention bears on whether she is being brought to trial within a "reasonable period of time" under ORS 135.747. However, we do not now decide that plaintiff is entitled to a final

---

[13] We do not read "presumption" in the constitutional and statutory formula to mean anything divorced from evidence, since to do so would attribute to the drafters an improbable purpose to reverse the traditional presumption of innocence and would raise questions of due process. *See, e.g., Bell v. Burson,* 402 US 535, 91 S Ct 1586, 29 L Ed 2d 90 (1971); *Stack v. Boyle,* 342 US 1, 72 S Ct 1, 96 L Ed 3 (1951); *Taylor v. Kentucky,* 436 US 478, 98 S Ct 1930, 56 L Ed 2d 468 (1978). *Cf. Kentucky v. Wharton,* 441 US 786, 99 S Ct 2088, 60 L Ed 2d 640 (1979); *Estelle v. Williams,* 425 US 501, 503, 96 S Ct 1691, 48 L Ed 2d 126 (1976).

dismissal of the charge against her for lack of a speedy trial. As stated above, short of an extreme and wholly unjustified passage of time, that remedy is required when there has been purposeful prosecution delay or probable prejudice to the defense. There is no question of bad faith on the part of the prosecution, but plaintiff has raised the issue that the delay has adversely affected her defense.

What evidence we have on that issue appears in the record of the February, 1980, hearing. It relates partly to the asserted loss of defense witnesses and partly to the condition of the accused herself. An investigator for the defense testified, without elaboration, that plaintiff's mother, who suffered from terminal cancer, could testify to matters material to the defense. Plaintiff asserts, without contradiction, that her mother has since died. The investigator also testified that other witnesses whom he had previously located had moved and might be difficult to find. Plaintiff herself testified that her lengthy imprisonment had caused her to become depressed with worry about her children and other emotional difficulties and to lose interest in cooperating in her defense, at one point wishing to discharge her attorney. There was supporting testimony from the investigator and from a psychiatrist employed by the county corrections division, who treated plaintiff for anxiety and depression.

While this evidence reinforces plaintiff's case for a speedy trial, it does not establish that a fair trial is now no longer possible so as to entitle plaintiff to dismissal of the prosecution upon the present writ. The hearing was held more than seven months ago, and additional or different evidence concerning the potential effect of the delay on plaintiff's defense may have developed. Like the strength of the evidence of guilt to which we have referred previously, this also is the kind of evidence that can best be evaluated by a trial court in the first instance. Plaintiff's claim can be renewed and, if necessary, preserved on appeal. If the delay is found before or at trial to have created a reasonable possibility of prejudice to plaintiff's defense, it is the court's responsibility to dismiss the case. *Cf. State v. Jenkins,* 29 Or App 751, 565 P2d 758 (1977), applying the rule of *State v. Ivory, supra,* 29 Or App at 760. If the

accused is neither released nor tried as soon as practical, her petition for a writ of habeas corpus can be renewed. Meanwhile, plaintiff is remanded to the custody of defendant.

Plaintiff remanded.

**TONGUE, J.,** concurring.

I agree with the result reached by the majority and do not necessarily disagree with what the majority seeks to accomplish by its opinion. I do not, however, agree with some of the statements made by the majority in its opinion or with some of its reasoning. I also do not understand some of its reasoning. On the contrary, I find myself more in agreement with the reasoning of the concurring opinion by Tanzer, J. Because of the need that this case, as a petition for writ of habeas corpus, should be decided without further delay, I do not belabor these differences.

I am disturbed, however, with the statement by the majority that "* * * If the accused continues in custody, *any* further postponement of her trial will no longer be 'trial within a reasonable time' in the sense of ORS 135.747," so as to require dismissal of this indictment without prejudice. The majority, by its opinion, is critical of the fact that there has been "a time of approximately 19 months since the conclusion of the omnibus hearing that cannot be laid to any request of plaintiff * * *." Unfortunately, the courts, including this court, can hardly disclaim responsibility for much of this delay.

This case was argued and submitted to this court for decision on June 25, 1980. Historically, petitions for writs of habeas corpus have demanded not only preferential, but accelerated decision by the courts and should be decided within days, not months, although the issuance of an opinion explaining the reasons for such action may follow later. Yet it has taken the majority more than four months to make a decision denying this petition, despite the fact that members of this court are in agreement that the petition should be denied, and disagree only upon the reasons for doing so.

The potential problems resulting from the possible dismissal of the indictment without prejudice unless the

accused is released from custody are compounded by the fact that an appeal is now pending before the Court of Appeals involving the allowance by the trial court of defendant's motion to suppress evidence. Aside from the question whether, pending that appeal, the trial court has jurisdiction to do anything, is the fact that upon such a dismissal that appeal would become moot and the issues raised in that appeal would be unresolved and would remain to be resolved in the event that the accused is again indicted for this murder. In such an event, it can be expected that the accused would again make the same motion to suppress; that the trial court would again allow that motion and that the trial of this case would then be again postponed by another appeal by the state.

If this self-admitted participant in such a brutal killing is not brought to trial and is eventually turned free for failure to be given a "speedy trial," this court must bear a heavy share of the responsibility.

**TANZER, J.** specially concurring.

The majority opinion addresses the pretrial release and speedy trial contentions separately and so shall I.

### I. Pretrial Release

The problem with the majority discussion of the pretrial release issue is not that the portion of it necessary to the decision is wrong, but that the opinion says more than it ought. I cannot join in the extraneous discussion and I write separately to point out some of the difficulties inherent in it.

The issue presented on a petition for habeas corpus is the legality of the present custody of the plaintiff. *Owens v. Duryee,* 285 Or 75, 79, 589 P2d 1115 (1979). ORS 34.310 provides:

"Every person imprisoned or otherwise restrained of his liberty, within this state * * * may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment or restraint, and if illegal, to be delivered therefrom."

The writ presents no issue of what must be done in the future to assure that presently lawful custody remain lawful.

The court is empowered only to deal with the situation before it. Under ORS 34.590, the only decision for the court is whether to discharge the plaintiff:

"If no legal cause is shown for the imprisonment or restraint, or for the continuation thereof, the court or judge shall discharge such party from the custody or restraint under which he is held."

Because the plaintiff is in custody by virtue of a judicial order, then he may be released only if one of several statutory conditions exist. None of those conditions refer to the future. They are set out in ORS 34.610:

"If it appears on the return that the prisoner is in custody by virtue of an order or civil process of any court legally constituted, or issued by an officer in the course of judicial proceedings before him, authorized by law, such prisoner shall be discharged only if one of the following cases exists:

"(1) The jurisdiction of the court or officer has been exceeded, either as to matter, place, sum or person.

"(2) The original imprisonment was lawful, yet by some act, omission or event which has taken place afterwards, the party has become entitled to be discharged.

"(3) The order or process is defective in some matter of substance required by law, rendering the same void.

"(4) The order or process, though in proper form, has been issued in a case not allowed by law.

"(5) the person having the custody of the prisoner under such order or process is not the person empowered by law to detain him.

"(6) The order or process is not authorized by any judgment or decree of any court, nor by any provision of law."

The majority opinion states correctly that ORS 135.240 and Or Const., Art. I, § 14, require that one accused of murder may only be denied pretrial release if "the proof is evident" or "the presumption strong" that the person is guilty of the crime. The majority opinion then examines the order of August 30, 1979, denying pretrial release. That order concluded that there was "more than a fair likelihood" that defendant would be convicted. The majority apparently concludes that the order is legally sufficient on its face and is supported by the evidence. It is arguable that the order misstates the legal standard, but in light of the

context of the proceeding and the order, I concur in the majority's conclusion that the order was lawful. Under ORS 34.610, that conclusion is dispositive and any further discussion is superfluous.

It is at this point that the majority opinion goes seriously astray. The majority then does two contradictory things. First, it concludes that the order is regular on its face, that there is sufficient evidence to support the order and that plaintiff is not entitled to release.[1] Then it says that it is not certain that the court applied the proper legal standard of proof because of an oral comment of the court, and will not assume that it applied the correct standard. 290 Or at 89-90.

It is fundamental that a written order of the court controls. Where there is a discrepancy between an oral statement of the trial court and its written order, we review the written order. This is because a judge may speak casually when discussing the case or giving guidance to the lawyers as to what his findings or conclusions may be, or, as we observed in *State v. Swain/ Goldsmith,* 267 Or 527, 517 P2d 684 (1974), the court may change its mind in the interim. The judicial act subject to our review is the written order signed by the court. As we said in *State v. Swain/Goldsmith:*

"We must first determine what the district court decided. This is governed by the order which the district judge signed and not by any statement which he made at the conclusion of the hearing. A judge may change his mind concerning the proper disposition between the time of a hearing and his final action which takes place when he signs the order disposing of the matter. * * *" 267 Or at 530.

The majority upholds the written order. It erroneously bases its conclusion upon what the court said orally.

---

[1] "That is not the case here. Although there may be some doubt of the circuit court's legal premises, as stated above and as will be mentioned later, this does not appear from the order itself. As to the strength of the evidence of plaintiff's guilt, the facts are not undisputed. From our own examination of the stipulated record, we cannot say that a judge could not reasonably consider the evidence of plaintiff's guilt to be strong. Accordingly, plaintiff is not entitled to release under the writ of habeas corpus on this issue." 290 Or at 85.

The court said orally that it considered the proof the district attorney's office "feels" they may be able to offer, and the majority holds that what the prosecutor "feels" does not meet the evidentiary standard necessary in a pretrial release hearing. It is obvious that the trial court was referring to the very evidence which the majority holds was properly before it and was sufficient to support the order. Under these circumstances, I cannot join in a conclusion that invalidates an order on the basis of a casual oral statement by the trial judge which is superseded by an order.

The most unacceptable portion of this part of the majority opinion, however, is that it is pure dicta. The majority holds that we would not on habeas corpus "look to the reasons behind the court's order as long as the undisputed facts did not show the order to be contrary to law," but then goes on to discuss the trial court's oral statement because, it states, the existence of a lawful order "does not preclude the circuit court itself from reexamining that order upon a further consideration of the applicable standards." It is extraordinary that an appellate court would endeavor to pronounce law to be applicable in the unlikely event that a trial court might spontaneously reexamine its own lawful order.

In summary, I concur in the standard for pretrial release stated by the majority and in the majority conclusion that the written order was sufficient. I cannot concur in the additional discussion and holdings.

## II. Speedy Trial

The difficulty with the majority resolution of the speedy trial issue also is not that it errs in its analysis of the issue presented, but that it discusses issues not presented. I cannot join in the extraneous discussion of this issue because this case does not give the opportunity to understand fully its implications. For that reason, dicta should be avoided.

The majority commences by observing that the law of speedy trial has statutory and constitutional sources. It continues:

"Their relationship among themselves and with the law governing pretrial detention is complex." 290 Or at 79.

The decision of speedy trial challenges often calls for the application of judgment based upon imprecise criteria. The analysis may be imprecise and judgmental, but it is not necessarily complex. I see the function of this court when faced with the possibility of complexity to simplify it, not to compound it, and that is one reason I write separately.

As I stated above, a writ of habeas corpus puts in issue the legality of the custody of the plaintiff. It deals with the present, not the future. The defendant has answered that custody is lawful because the plaintiff has been indicted for murder. The plaintiff answers that custody is no longer lawful because her right to a speedy trial has been denied and the case must be dismissed. We are not called upon to resolve a motion for trial. The writ properly presents no such demand because this case is in habeas corpus, not mandamus. The issue is whether the plaintiff is entitled to dismissal because a speedy trial has already been denied.

The majority addresses that issue by applying the four factors outlined in *Barker v. Wingo,* 407 US 514, 92 S Ct 2182, 33 L Ed 2d 101 (1972), which also guide application of the Oregon constitution, *State v. Ivory,* 278 Or 499, 564 P2d 1039 (1977). I agree generally with the application of those factors to this case.[2]

Applying the four factors, the majority concludes that the plaintiff is presently not entitled to dismissal because, as far as this record shows, she has not been denied a speedy trial. The majority concludes:

"[W]e do not now decide that plaintiff is entitled to a final dismissal of the charge against her for lack of a speedy trial." 290 Or at 89-90.

After a discussion of plaintiff's evidence of prejudice due to the passage of time, the court concludes:

[2] I do not join in the reference to *State ex rel Oregonian Pub. Co. v. Deiz,* 289 Or 277, 613 P2d 23 (1980). In that case we stated the principle that the command of Article I, Section 10, Oregon Constitution, that justice shall be administered openly was a limitation upon the court rather than an expression of a right of either litigant. The principles involved in the entitlement of a member of the public to observe a juvenile court proceeding are not necessarily material to questions of speedy trial. The principles for which *SER Oregonian Pub. Co. v. Deiz* is cited are not clear to me. Because the plaintiff's claim can be resolved without reference to it and because the implications of that reference are unclear and unforeseeable, I do not join in that reference.

"While this evidence reinforces plaintiff's case for a speedy trial, it does not establish that a fair trial is now no longer possible so as to entitle plaintiff to dismissal of the prosecution upon the present writ." 290 Or at 90.

That conclusion is dispositive of the writ of habeas corpus and I concur in it.

The portion of the opinion which I would not reach and do not join is that portion dealing with what the majority refers to as the *prospective* rather than *retrospective* application of the right to speedy trial. The beginning of the extraneous line of reasoning is:

"It is apparent that different factors [than what?] are important to the substance of the constitutional command [present entitlement to trial] and to the remedy of dismissal." 290 Or at 81.

That may be, but habeas corpus does not present the occasion to look into the future. There is no demand for prompt trial in this habeas corpus proceeding. The majority concludes that any further postponement while plaintiff remains in custody will be statutorily impermissible (290 Or at 81) and that if the motion to dismiss is renewed and any reasonable possibility of prejudice to plaintiff's defense is found, then the trial court must dismiss the case regardless of the other three factors. 290 Or at 90. The trial court's future conduct of this case is for the trial court to decide and for this court to review. At this point, anything this court says is advisory and prejudges a record which is yet to be made. We should not write dicta where we do not fully foresee the implications of our analysis or advice.

If, however, the majority chooses to advise the trial court as to the disposition of the criminal case, then it should do so with clarity. As I understand trial and appellate procedure, the trial court has no jurisdiction to order the parties to trial during the pendency of the appeal in the Court of Appeals. The rule applicable to civil cases, ORS 19.033(1), is also applicable to criminal cases whether the appellant be the defendant or the state. In *State v. Jackson,* 228 Or 371 (1961), defendant appealed a denial of his motion to dismiss the indictment. Thereafter, he was tried and he appealed his conviction. The appeals were

consolidated. The denial of the motion to dismiss was affirmed, but the judgment was reversed because the trial court had no jurisdiction to proceed after the filing of the notice of appeal. The court said:

"It is a well-settled rule that after jurisdiction has been vested in an appellate court by the taking of an appeal the lower court cannot proceed in any manner so as to affect the jurisdiction acquired by the appellate court or defeat the right of the appellants to prosecute the appeal with effect. 4 A CJS 396, Appeal and Error, § 607. In 3 Am Jur 192, Appeal and Error, § 528, this rule is said to be 'universally recognized.' It has been recognized by this court in a number of cases, including *Caveny v. Asheim et al,* 202 Or 195, 208-211, 274 P2d 281; *Cranston v. Stanfield et al,* 123 Or 314, 319, 261 P 52; *State v. Kleckner et al,* 116 Or 371, 239 P 817, 240 P 1115."

"* * * * *

"The fact that an order refusing to dismiss an indictment is interlocutory, is not of itself controlling. No doubt, there are many cases where an appeal from an interlocutory order does not oust the lower court of jurisdiction to proceed with the case in some of its aspects; but if, as here, the lower court cannot try the case without determining the only question involved in the appeal, then the fact that the appeal is from an interlocutory order becomes immaterial." 228 Or at 382-383, 385-386.

I assume that this case will be tried if and when the Court of Appeals decides the appeal. I cannot join in the part of the majority opinion which purports to instruct the trial court as to its future disposition of a motion which might be filed at some future stage of the proceedings.

Tongue, J., joins in this opinion.