Argued and submitted July 10, reversed and remanded for trial November 2, 1981

STATE OF OREGON,
*Appellant,*

*v.*

RONALD NORMAN LANGLOIS,
*Respondent.*

(No. 78-4-263, CA 19773)

635 P2d 653

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

John Daugirda, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Buttler, Presiding Judge, Joseph, Chief Judge, and Warren, Judge.

JOSEPH, C. J.

**JOSEPH, C. J.**

The state appeals a pretrial order dismissing an indictment for lack of speedy trial.[1] ORS 138.060(1). We reverse and remand for trial.

On April 18, 1978, defendant was indicted for burglary in the first degree. Trial was set initially for May 16, 1978, but on defendant's motion it was reset for June 14, 1978.[2] On June 2, 1978, the state sought a protective order to prevent discovery of certain handwritten, "fragmentary" police notes. The motion was denied. On June 13, 1978, the court suppressed the testimony of two prosecution witnesses because of the failure to disclose the notes.[3] A continuance pending the state's appeal of the suppression order was granted, and no trial date was set. On August 25, 1978, defendant was released from custody.[4]

On June 18, 1979, we issued an opinion reversing the order of the circuit court and remanding the case for trial. *State v. Langlois,* 40 Or App 629, 595 P2d 1388 (1979). The Supreme Court reversed in a memorandum opinion issued October 2, 1979, *State v. Langlois,* 287 Or 503, 600 P2d 872 (1979), on the ground that the trial court's suppression order was not appealable.[5] The mandate was entered on December 26, 1979.

When defendant failed to appear on December 28, 1979, for the setting of a new trial date, the trial court

---

[1] The trial court dismissed the indictment with prejudice. Its order was not based upon defendant's statutory right to a trial "within a reasonable period of time." ORS 135.747; 135.753(2); *see State v. Ivory,* 278 Or 499, 503, 564 P2d 1039 (1977); *see also,* n 7, *infra.*

[2] Defendant's motion was based in part on the need to acquire the names of alibi witnesses and in part on the prosecution's alleged failure to cooperate in discovery.

[3] The state "suggested" that the trial court suppress the testimony of the officers, so that it could have an appealable order. *State v. Langlois,* 287 Or 503, 505, 600 P2d 872 (1979). Defendant apparently made no motion to suppress the testimony.

[4] Defendant had originally moved for release on personal recognizance on August 14, 1978. That was denied; but bail was reduced, and defendant posted a 10 percent deposit.

[5] Because the suppression order was invited by the prosecution, the court, citing *State v. Koennecke,* 274 Or 169, 545 P2d 127 (1976), held it was not appealable.

revoked his bail and issued a bench warrant for his arrest. On April 9, 1980, in ordering a forfeiture of defendant's security deposit, the court stated that "defendant's whereabouts are unknown."

Defendant's "whereabouts" are next reflected in the record in an order dated September 19, 1980, declaring him indigent and appointing counsel. A transport order shows that he was an inmate at the Oregon State Penitentiary on October 28, 1980.[6] Trial was set for December 3, 1980. However, on that date the court granted defendant's motion to dismiss for lack of a speedy trial.

The constitutional provisions governing trial delay are in Article I, section 10, of the Oregon Constitution and in the federal Sixth Amendment "speedy trial" guarantee. While the provisions are not identical, they do not differ materially with respect to what constitutes unconstitutional delay. *Haynes v. Burks,* 290 Or 75, 82, 619 P2d 632 (1980); *State v. Ivory,* 278 Or 499, 504, 564 P2d 1039 (1977). Analysis under either provision requires "consideration" of four factors brought together in *Barker v. Wingo,* 407 US 514, 92 S Ct 2182, 33 L Ed 2d 101 (1972): (1) the length of the delay; (2) the reason for the delay; (3) the accused's assertion of his right to a speedy trial; and (4) the possibility of prejudice to the accused's case. However, none of these "factors" is a necessary condition to a finding of unconstitutional delay. *Barker v. Wingo, supra,* 407 US at 533. Moreover, whether the *remedy* of dismissal with prejudice is appropriate depends upon whether the length of the delay is "extreme or wholly unjustified," the prosecution has purposefully caused the delay, or there is "probable prejudice" to the defendant.[7] *Haynes v. Burks, supra,* 290 Or at 83, 90.

---

[6] Presumably defendant was in the state's custody for some time before the transport order, but the record does not show how long. Thus, although we will not conclude — as the state would have us conclude — that defendant "voluntarily absented himself from the trial court's jurisdiction" for nine months after the case was returned for trial, we cannot find that the state was negligent in not bringing him to trial sooner than it did.

[7] Other remedies are appropriate when different circumstances give rise to the delay. *Haynes v. Burks, supra,* 290 Or at 83. ORS 135.747 and 135.753(2) provide for dismissal without prejudice of an instrument charging a felony or Class A misdemeanor if a defendant, without his application or consent, is not

■      The length of the trial delay — two years and eight months — does not alone decide the case. Defendant himself was responsible for at least part of the delay. His failure to appear for the setting of a new trial date after the Supreme Court's resolution of the state's appeal weighs against the conclusion that he wanted a speedy trial.[8] Further, although there is some suggestion that the state was negligent in failing to bring defendant to trial, there is no question of bad faith on the part of the prosecution. The controlling issue is whether the delay resulted in "probable prejudice"[9] to defendant. Although the trial court found prejudice of a constitutional magnitude, we are not bound by that determination. *See State v. Warner,* 284 Or 147, 158, 585 P2d 681 (1978); *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968).

■      What evidence there was on the issue of prejudice appears in the record of the December, 1980, hearing. Defense counsel stated by affidavit:

"* * * [D]efense counsel has had to hire a private investigator in an attempt to locate and contact the eleven

brought to trial "within a reasonable period of time." Defendant does not argue that the judgment of the trial judge is sustainable on these statutory grounds, and we do not reach that question.

[8] While an assertion of the right to a speedy trial is not necessary in order to enforce the right, *State v. Vawter,* 236 Or 85, 87, 386 P2d 915 (1963), it is one factor to be considered in determing whether there has been a constitutional deprivation. *Barker v. Wingo, supra,* 407 US at 528; *State v. Meikle,* 44 Or App 91, 96, 605 P2d 301 (1980).

[9] In *Haynes v. Burks, supra,* 290 Or at 75, the court announced that when probable prejudice is shown, dismissal with prejudice is the appropriate remedy. While "probable prejudice" would seem to require a stronger showing than "reasonable possibility of prejudice," the court nevertheless stated:

"* * * Plaintiff's claim can be renewed and, if necessary, preserved on appeal. If the delay is found before or at trial to have created a *reasonable possibility of prejudice* to plaintiff's defense, it is the court's responsibility to dismiss the case. *Cf. State v. Jenkins,* 29 Or App 751, 565 P2d 758 (1977), applying the rule of *State v. Ivory, supra,* 29 Or App at 760." 290 Or at 90.

Thus, the "rule" in *State v. Ivory* that, when the other three *Barker* factors weigh in defendant's favor, only a reasonable possibility of prejudice need be shown apparently remains intact. However, because at least two of the other three *Barker* factors — reason for the delay and timely assertion of the right to a speedy trial — do not strongly support defendant's claim of a constitutional deprivation, something more than a reasonable possibility of prejudice is required, even under the rule of *State v. Ivory, supra.* Thus, regardless of whether *Haynes* modified the requisite showing of prejudice stated in *Ivory,* a showing of probable prejudice is required in the present case.

alibi witnesses it had initially intended to produce for trial in June of 1978; the alibi defense being critical to the defendant in both of the above cases;

"That further investigation revealed that eight of the above alibi witnesses would be necessary to produce at trial, to establish defendant's whereabouts during a period of approximately two to two and one-half hours on March 24, 1978; and obviously, to establish what defendant was doing, what he was wearing, and any conversation he may have had with these witnesses;

"* * * * *

"I have been informed by my investigator, Mr. Larry Felix, that to this date he has been totally unsuccessful in locating two of the eight witnesses, *one who can positively place the defendant's whereabouts at 3:30 p.m. on March 24, 1978.*

"* * * *[T]he other witness, a co-worker of defendant, could testify as to defendant's whereabouts and activities up until approximately one hour before the alleged burglary, and later that evening;*

"* * * [M]y investigator informs me that of the remaining six witnesses, all six are totally unable, or their memories are extremely vague, to recall such particulars as what the defendant was wearing, what conversations, if any, they had with defendant, or what time of day it was they saw the defendant; five of the six can recall seeing the defendant, with little or nothing else, and that each of these witnesses had indicated to Mr. Felix that due to passage of time they are doubtful that they can recall, with particularity of [*sic*] specificity, the events and circumstances of March 24, 1978." (Emphasis supplied.)

In defense counsel's memorandum of law in support of the motion to dismiss, he stated:

"* * * At present, two witnesses cannot be located at all; one, a co-worker of defendant who had been with defendant both prior to, and after, the alleged burglary. *The other witness is defendant's parole officer, who has left her former employment and cannot, at this time, be located; defendant was in her office one hour after the alleged incident.* Two other witnesses were finally located, having moved from the Portland area during the past two and one-half years, one in Seaside, the other in Astoria. Of the six witnesses located, all have expressed to the investigator that their recall of the day's events, and the defendant, are vague, poor, or nonexistent, in terms of any meaningful detail." (Emphasis supplied.)

However, at the hearing, defense counsel said:

"Your Honor, the prejudice is particularly in one specific area, in that one of the witnesses which was to be called as an alibi witness was notified. This was a man by the name of Rick Michaels. Mr. Michaels was a foreman of A & F Roofing where he was employed at the time and he worked on that day. Mr. Michaels can testify he is the man in charge of keeping the time slips, he can testify what time [defendant] arrived and got off. Mr. Michaels has, according to the report that we were given * * * back in 1978, will also testify he, later that evening, that same evening on the 24th, saw [defendant] at approximately 6:30 and was with him for another hour and a half to two hours prior to [defendant's] arrest."

He also said that for three weeks, defendant's private investigator was unable to locate the missing foreman.

We cannot conclude that defendant's claims of prejudice amount to a showing of probable prejudice or even of a reasonable possibility of prejudice. Although it is possible that the missing witnesses' purported testimony would be material to the defense, the record does not give any indication of whether this testimony would be exculpatory. It is particularly significant that defendant stressed that the prejudice consisted of the unavailability of the foreman. The record suggests that he is the weaker of the two missing alibi witnesses. (His time frame would leave a gap of several hours between his last seeing defendant at work and seeing him again after the burglary; the parole officer might have seen defendant an hour after the burglary.) Moreover, because the record does not disclose *when* the witnesses became unavailable, we cannot attribute the unavailability to the state's delay.

Defense counsel's mere recitation that the investigator reported that the remaining alibi witnesses could no longer recall in detail relevant events and circumstances on the day of the burglary is too "attenuated" to suggest the reasonable possibility of prejudice. *Cf. State v. Meikle,* 44 Or App 91, 96, 605 P2d 301 (1980) (bare assertions in affidavits of defense witnesses that they could no longer remember exculpatory facts considered of little weight in showing extent of prejudice and, without more, would not be accorded much weight). Finally, the only evidence of

effort to find the witnesses was counsel's statement that the investigator had tried for three weeks without success.

Reversed and remanded for trial.