Argued and submitted October 23, 1981, reversed;
remanded for trial July 8, 1982

## STATE OF OREGON,
*Appellant,*

*v.*

## DELORES ANN NEAL et al,
*Respondents - Cross-Appellants,*

## ROCKY LEROY SHAVER et al,
*Respondents.*

(Nos. 156395, 156991, 157847, 157906, 157861,
158049, 158215 and 158427, CA A20784)

647 P2d 974

Richard David Wasserman, Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Paul J. De Muniz, Salem, argued the cause for respondents - cross-appellants. With him on the brief was Garrett, Seideman, Hemann, Robertson & De Muniz, P.C., Salem.

No appearance for respondents.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

The state appeals a District Court order granting defendants' motions to dismiss on the ground that defendants were denied their constitutional right to speedy trial. We reverse and remand for trial.

The district court adopted the stipulated facts prepared by the parties. On October 1, 1980, the Marion County District Attorney publicly announced that his office would not prosecute certain "shoplifting" cases filed after September 29, 1980, until a staffing shortage in his office was resolved. On October 10, 1980, the presiding judge of the District Court advised the District Attorney of the court's intent to dismiss, without prejudice and "in the interests of justice," all pending shoplifting cases, except those meeting the criteria outlined in the District Attorney's new policy. The court thereafter sent a notice to all defendants in pending shoplifting cases, saying each could choose to dispose of the case in one of three ways: (1) it would be taken off the trial docket and continued for dismissal on December 31, 1980; (2) it would be continued on the trial docket; or (3) the defendant could enter a plea of guilty. The court's notice also informed defendants that if they did not return an enclosed form by October 31, the court would assume that each had consented to the removal of the case from the trial docket and that, if the District Attorney filed a new charge after December 31, 1980, each would have waived any speedy-trial objection. With the exception of defendant Shaver, each defendant or an attorney signed and returned the enclosed form waiving the right to a speedy trial and consenting to the court's dismissal of the case.

The District Attorney responded to the court's action by advising the court that the state would appeal the dismissal of any pending case. After further communications between the court and the District Attorney, the court notified defendants that, because the District Attorney would not concur in the proposed dismissals, their cases would be restored to the trial docket. With the exception defendants Shewmaker, Danielson and Shaver, each defendant received notice of the court's replacing of the case back on the trial docket. Because of the action of the

court and the District Attorney, the setting of defendants' cases for trial was delayed for three to eleven months.

■       The state contends that the trial court erred in dismissing these cases on constitutional speedy-trial grounds.[1] In *Barker v. Wingo,* 407 US 514, 530-32, 92 S Ct 2182, 33 L Ed 2d 101 (1972), the Supreme Court articulated four factors for determining whether the speedy-trial right has been denied: (1) the length of the delay; (2) the reason for the delay; (3) the accused's assertion of the right to a speedy trial; and (4) the possibility of prejudice to the accused's case. No one factor is a necessary condition to a finding of unconstitutional delay, 407 US at 533; rather, the "point of the formula is that all relevant criteria be examined and none overlooked or ignored." *Haynes v. Burks,* 290 Or 75, 81, 619 P2d 632 (1980) (citing *State v. Ivory,* 278 Or 499, 505, 564 P2d 1039 (1977)).

The first *Barker* factor we consider is the length of the delay. Here, the delay between the time of arrest and the time set for trial ranged from three to eleven months. The state concedes that these delays were of sufficient duration to trigger consideration of the other factors. *But see United States v. Nance,* 666 F2d 353, 360 (9th Cir 1982) (five-month delay not enough to trigger the balancing and examination of other *Barker* factors). For purposes of analysis, we accept the state's concession.

The second factor is the reason for the delay. The delays here resulted when the court *sua sponte* removed defendants' cases from the trial docket and subsequently restored those cases to the docket after the District Attorney had objected. The state argues that the delays resulted from defendants' own choices and that, therefore, this factor should weigh against them. We assume, without deciding, that the delays were attributable to the actions of the court in proposing to dismiss the cases. Assuming that the delays are attributable to the court, however, does not end our inquiry.

---

[1] The federal Constitution's guarantee of a speedy trial is binding on the states through the Fourteenth Amendment. *Klopfer v. North Carolina,* 386 US 213, 223, S Ct 988, 18 L Ed 2d 1 (1967). Although the provisions of the two constitutions are not identical, they do not differ materially about what constitutes unconstitutional delay. *Haynes v. Burks,* 290 Or 75, 82, 619 P2d 632 (1980); *State v. Ivory,* Or 499, 504, 564 P2d 1039 (1977); *State v. Langlois,* 54 Or App 452, 455, 635 P2d 653 (1981).

In *State v. Meikle,* 44 Or App 91, 605 P2d 301 (1980), the trial court, believing that certain statutes were unconstitutional, had refused to give jury instructions in cases involving those statutes. In response to a writ of mandamus ordering it to give such instructions, the court ordered all cases affected by the mandate continued until an appellate court decided the constitutionality of the statutes. Following an appellate decision upholding the statutes, trial was set for a date two years after the arrest. The defendant's motion to dismiss was denied, and he was convicted. On appeal, we analyzed the reason for the delay, noting that the delay caused by the continuance ordered by the trial court was state action, ordinarily attributable to the prosecution. 44 Or App at 94 (citing *State v. Rathbun,* 287 Or 421, 600 P2d 392 (1979)). In distinguishing between action by a court and action by a prosecutor, we observed:

> "* * * Unlike a prosecutor, * * * a court is not an adversary to a defendant and a delay by the court is not necessarily for purposes which are adverse to defendant's interest. * * * Moreover, the judiciary's responsibility to safeguard the rights of the parties at times may of necessity override the effectuation of expeditious administration of justice. *State v. Koennecke,* 29 Or App 637, 565 P2d 376, *rev den* [280 Or 171] (1977). * * *" 44 Or App at 94-95.

In concluding that, under the circumstances, the trial court's order should not weigh against the state, we held:

> "* * * [A]lthough the bulk of the delay is attributable to the state, the fact that the continuance was intended to benefit defendant saves this factor from weighing against it. * * * [U]nder circumstances such as these where a delay in a case is caused by a judicially imposed blanket order pending the resolution of a legal issue which is likely to arise in the trial or appeal of that case, the reason for the delay does not benefit the defendant in the weighing process." 44 Or App at 95.

Here, as in *Meikle,* a major reason for the delay was to benefit defendants by dismissing their cases. The District Court proposed the dismissals to preserve "fair and equal treatment as between similar cases" and "in the interests of justice." Although the state arguably benefited from the delay, because it was then able to direct its attention to more serious offenses, the primary thrust of

the court's initiative was intended to benefit defendants. Under such circumstances, we conclude that this factor does not favor defendants in the *Barker* weighing process.

The state also contends that the third factor, the accused's assertion of his right to a speedy trial, weighs against defendants. It argues that defendants' strategy was not to seek speedy trials, but rather to do nothing, in hope that the cases would simply "die on the vine" and that this strategy is the antithesis of the assertion of a speedy-trial right. In response, defendants contend that, after the court had offered and they had accepted the proposal to dismiss their cases, there was no longer any reason for them to assert their speedy-trial right.

In *Barker,* the Supreme Court adopted a flexible approach to how the presence or absence of waiver should be weighed in speedy-trial analyses. 407 US at 528, 536; *see Haynes v. Burks, supra,* 290 Or at 81. Given the District Court's proposal to dismiss in return for defendants' waiver of their speedy-trial right (which was in fact never done), we conclude that the third factor does not control here. The fact that defendants did not raise their speedy-trial right until the District Court disavowed its agreement with them neither supports nor weighs against defendants' contention that they were denied a speedy trial.

The fourth factor is the possibility of prejudice. In *Haynes v. Burks, supra,* the court stated that the proper test is whether there is a "reasonable possibility that delay will impair the defense * * *." 290 Or at 82. Although in dismissing these cases the District Court found prejudice of constitutional magnitude, we are not bound by that conclusion. *State v. Warner,* 284 Or 147, 158, 585 P2d 681 (1978); *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968); *State v. Langlois,* 54 Or App 452, 456, 635 P2d 653 (1981).

In several speedy-trial cases we have found the absence of demonstrated prejudice in the record to be of controlling significance. In rejecting defendant's speedy-trial claim in *State v. Meikle, supra,* we noted that there was nothing in the record "to show the extent of [the alleged] prejudice other than the bare assertions in [defendant's] witnesses' affidavits that they could no longer remember the observations for their belief that defendant

had been sober, and that a sixth witness who had disappeared would have testified in his behalf." 44 Or App at 96. In *State v. Vance,* 53 Or App 290, 631 P2d 843 (1981), even though the state had conceded that the first three *Barker* factors favored defendants, we found no constitutional violation, absent a showing of prejudice. 53 Or App at 297. Similarly, in *State v. Langlois, supra,* finding that the record lacked evidence of prejudice, we held that defendant had failed to establish a constitutional violation. 54 Or App at 458-59.

Defendants contend that they have suffered several types of prejudice. Some are said to have left the area, thinking their cases were dismissed, thereby losing contact with counsel and abandoning preparation of their defense. They also assert that it would have been advantageous to go to trial earlier because "at least one Marion County jury [had] summarily acquitted a similarly situated defendant following evidence of the mass dismissals of other shoplifting cases." Additionally, they state that they have suffered untoward anxiety, because the District Court led them to believe that their cases would be dismissed and then ordered them set for trial. All of these assertions of prejudice, however, are stated in the abstract. Indeed, defendants fail to direct our attention to anything *in the record* indicating that they have actually suffered a "reasonable possibility" of prejudice. Absent substantial evidence of prejudice, we cannot accord this fourth *Barker* factor any weight in defendants' favor.

After considering the four *Barker* factors in the context of this case, we hold that defendants were not denied their constitutional right to a speedy trial. Admittedly, this case represents an unfortunate lapse in orderly judicial administration. Prosecution of defendants, however, will not violate " 'those fundamental conceptions of justice which lie at the base of our civil and political institutions.' " *United States v. Lovasco,* 431 US 783, 790, 97 S Ct 2044, 52 L Ed 2d 752 (1977) (quoting *Mooney v. Holohan,* 294 US 103, 112, 55 S Ct 340, 79 L Ed 791, 98 ALR 406 (1935)).

■ In moving to dismiss, defendants also relied on ORS 135.747, the speedy-trial statute. We have already

concluded that defendants' constitutional speedy-trial objection lacks merit. We conclude that defendants' statutory objection likewise lacks merit. Furthermore, an order of dismissal pursuant to ORS 135.747 is not a bar to a subsequent prosecution for the same crime where, as here, the crime charged is a Class A misdemeanor. ORS 135.753(2).

■      Some defendants have cross-appealed, contending that they were denied their right to equal protection of the law. The state contends that we lack jurisdiction to hear the cross-appeal because ORS 138.040 limits defendants' right to cross-appeal to cases in which the state has appealed a pretrial order suppressing evidence under ORS 138.060(3). ORS 138.040 provides in relevant part:

> "The defendant may [cross-appeal] to the Court of Appeals * * * *when the state appeals pursuant to ORS 138.060(3).* Upon * * * cross-appeal, any decision of the court in an intermediate order or proceeding may be reviewed. * * *" (Emphasis added.)

Because this is not a case where the state has appealed pursuant to subsection 3 of ORS 138.060, we conclude that we lack jurisdiction to consider the cross-appeal. ORS 138.040; *See State v. Curran,* 291 Or 119, 122, 628 P2d 1198 (1981); *Lulay v. Earle v. Wolfer,* 278 Or 511, 513, 564 P2d 1045 (1977); *State v. Endsley,* 214 Or 537, 539, 331 P2d 338 (1958).[2]

The order granting defendants' motions to dismiss is reversed, and the cases are remanded for trial.

---

[2] There is legislative history which suggests that the 1977 legislature may have intended to amend ORS 138.040 to allow an expanded right of cross-appeal whenever the state appeals. *See* House Committee on Rules, *Summary of Hearings on SB 1073, July 2, 1977,* at 2. The clear and unambiguous language of the statute, however, does not permit a cross-appeal here.