Argued and submitted April 5, 2001, reversed and remanded with instructions
February 20, 2002

## STATE OF OREGON,
*Respondent,*

*v.*

## HALRAY M. HARMAN,
*Appellant.*

### 932917; A105876

40 P3d 1079

Jennelle Hall, Deputy Public Defender, argued the cause for appellant. With her on the brief was David Groom, Public Defender.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII). ORS 813.010. He claims that the five-year, seven-month delay between his arraignment and trial violated his statutory and constitutional entitlements to a speedy trial. We conclude that, while the delay did not violate the speedy trial provisions of either the Oregon or United States Constitutions, the trial court erred in denying defendant's statutory speedy trial claim under ORS 135.747. Accordingly, we reverse and remand.

The facts are undisputed. Defendant was arrested for DUII on June 24, 1993, and subsequently arraigned in July 1993. The trial court set over defendant's original trial date from December 1993 to April 1994 because of a change in the court's scheduling procedure. With trial approaching, defendant filed a discovery request in February 1994, seeking police personnel records of the arresting officer. In March 1994, both sides requested a continuance. The state was having problems obtaining the requested discovery, and defendant would not be available for the April trial date because of a medical appointment. The court granted the continuance and set the trial for early July 1994.

In March 1994, defendant filed a motion to compel discovery. After a hearing on April 12, 1994, the court issued an order on June 14, 1994, compelling the state to provide the requested discovery materials. On June 20, 1994, the state filed a motion to reconsider. The trial court held a hearing on the motion on July 20, 1994, and subsequently took the matter under advisement. After that hearing, nothing happened on the case for over ten months until May 23, 1995, when the state apparently sent the trial court a letter inquiring about the status of its motion to reconsider. On June 10, 1995, the trial court affirmed its original discovery order. Between June 1995 and September 1995 there was communication between the parties and the court regarding the extent of the discovery order, with the court ultimately issuing a revised and expanded discovery order.

In late September 1995, the state, in a collateral proceeding, sought a writ of mandamus for relief from the discovery order. On motion of the state, the trial court stayed the proceedings pending the outcome of the mandamus action, which was dismissed in March 1996. The proceedings were again stayed in April 1996 for the state's appeal of the writ's dismissal. The mandamus action was argued in this court in June 1997 and decided in September 1997. We ruled in the state's favor, holding that the trial court had exceeded its authority in issuing the discovery order. *State ex rel Glode v. Branford*, 149 Or App 562, 945 P2d 1058 (1997), *rev den* 326 Or 389 (1998). After the Supreme Court denied defendant's petition for review, the case was remanded to the trial court in May 1998.

Thereafter, the case sat for five months until defendant telephoned the court in October 1998 and inquired about his case. Defendant moved to dismiss the case on speedy trial grounds, but the trial court denied defendant's motion. In March 1999, approximately five years and seven months after defendant's arraignment, the case went to trial on stipulated facts and defendant was convicted of DUII.[1]

On appeal, defendant argues that the trial court erred by denying his motion to dismiss because the five-year, seven-month delay between arraignment and trial violated his statutory right to a speedy trial under ORS 135.747, as well as the speedy trial provisions of Article I, section 10, of the Oregon Constitution, and the Sixth Amendment to the United States Constitution. Because a constitutional violation would result in more complete relief (dismissal with prejudice) than a statutory violation (dismissal without prejudice), we begin with defendant's constitutional claims. *State v. Harberts*, 331 Or 72, 81, 11 P3d 641 (2000).

In *State v. Vasquez*, 177 Or App 477, 485-86, 34 P3d 1188 (2001), we summarized the Article I, section 10,[2] speedy trial analysis:

---

[1] The stipulated facts included that defendant had a blood alcohol content of 0.31.

[2] Pursuant to Article I, section 10, "[n]o court shall be secret, but *justice shall be administered*, openly and without purchase, completely and *without delay*, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation." (Emphasis added.)

"First, the court must consider the length and cause of the delay. If the delay, under the circumstances, is so long that it is 'manifestly excessive' so as to 'shock the imagination and the conscience,' then the court must dismiss the charges against the defendant without further inquiry. Similarly, if the delay was purposefully caused by the state to hamper the defense, further inquiry is again unnecessary. Barring either of those extreme circumstances, however, it is essential that the court assess all of the relevant considerations—length of delay, reasons for delay, and prejudice to the defendant—to determine if the circumstances warrant dismissal under Article I, section 10." (Citations and footnotes omitted.)

The state concedes, and we agree, that the five-year, seven-month delay here was sufficient to require inquiry into the remaining two factors. *State v. Mende*, 304 Or 18, 23-24, 741 P2d 496 (1987) (if delay is "substantially greater than the average, inquiry into the remaining two factors is triggered"). However, the delay in this case was not so shockingly long that dismissal is required without further inquiry. *See Harberts*, 331 Or at 89 (pretrial delay of five years "not so manifestly excessive that we may ignore the other factors"). Accordingly, we turn to the reasons for the delay.

Much of that delay is attributable directly to resolution of the discovery dispute and particularly the mandamus action in which the state prevailed. That portion of the total delay was reasonable and justified. *Id.* at 90. In *Harberts*, the court concluded that the portion of the total delay dedicated to resolving the state's interlocutory appeal addressing the admissibility of the defendant's inculpatory statements was justified for speedy trial purposes:

"We accept the trial court's finding that the state filed and pursued its first appeal with reasonable diligence and that defendant was required to seek review of the Court of Appeals' decision or lose his opportunity to challenge that ruling in the future. Under those circumstances, we conclude that the decision to take, and the time devoted to the resolution of, the state's first appeal was consistent with the state's constitutional duty to exercise reasonable diligence in bringing defendant to trial." *Id.* at 90.

That same reasoning is equally applicable here. Here, as in *Harberts*, the state's initial decision to oppose defendant's discovery request, and ultimately to pursue the mandamus action and subsequent appeal, constituted a legitimate justification for that portion of the total delay.[3]

■■■ There were, however, two portions of the total delay for which there is no good explanation. In particular, the state offers no justification for the ten months after the state's motion for reconsideration of the discovery order and the five months after issuance of the appellate judgment in the mandamus action. While there is no indication that either of those periods of delay was intentionally caused by the state, it is delay that weighs in defendant's favor. As the United States Supreme Court explained in *Barker v. Wingo*, 407 US 514, 531, 92 S Ct 2182, 33 L Ed 2d 101 (1972):

> "Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay."

That reasoning, which was cited favorably by the Oregon Supreme Court in *Harberts*, is applicable to the circumstances of this case. *See* 331 Or at 84. In particular, the first period of unjustified delay—the ten months that the state's motion for reconsideration languished before the trial court—weighs in defendant's favor. The second period of unjustified delay—the five months following the Supreme Court's denial of defendant's petition for review in the mandamus proceeding—also weighs in defendant's favor. That is so because, as the court explained in *Harberts*, it is incumbent on the state to make a case plagued by delay—justified

---

[3] In addition, a small portion of the total delay—roughly three months—is attributable to a continuance that the trial court granted at defendant's request. Neither party suggests that that portion of the total delay was unjustified.

or unjustified—its highest priority. *Id.* at 93. The state's failure to do so, and the resultant accumulation of additional months of unnecessary delay, weighs in favor of defendant. *See id.* ("Added to what by then had become almost five years of delay in bringing this incarcerated defendant to trial, those additional months of delay also weigh heavily in defendant's favor.").

In sum, while much of the total delay here was justified, more than a year of delay—some of which was after final resolution of the mandamus action—occurred as a result of the state's apparent negligence. On balance, therefore, the reasons for delay weigh in defendant's favor.

■ · We turn, thus, to prejudice. There are three types of prejudice a defendant can claim: (1) excessive pretrial detention, (2) anxiety and concern, and (3) impairment of the defense. *State v. Emery,* 318 Or 460, 473, 869 P2d 859 (1994). Defendant acknowledges that he was not subjected to pretrial incarceration but argues that he suffered both personal prejudice in the form of anxiety and stress-related physical symptoms and an impaired defense.

To support his personal prejudice argument, defendant points to his uncontradicted affidavit submitted with his motion to dismiss in which he averred that he had suffered both anxiety and stress-related physical symptoms as a result of the delay. In his affidavit, defendant stated:

> "I suffer from Fibromyalgia and have so since well before the arrest herein. Fibromyalgia presents as chronic, diffuse aching and pain in the muscles, typically accompanied by stiffness. Ancillary symptoms include headaches, irritable bowel syndrome, irritable bladder, peripheral vascular instability, and paresthesias. The severity of these symptoms is directly related to stress. I have experienced all or most of these symptoms and they are exacerbated by the stress associated with the extremely long pendency of this case."

We agree with defendant that his anxiety and stress stemming from the pending charges weigh in his favor. It is true that, as a consequence of any criminal prosecution, the defendant will typically face some anxiety. *State v. Hadsell,* 129 Or App 171, 177, 878 P2d 444, *rev den* 320 Or 271 (1994). But it

618

is also true that anxiety will typically become more burdensome as the length of delay increases. *State v. Hale*, 80 Or App 279, 282, 721 P2d 887 (1986) ("[T]here is no doubt that unresolved criminal charges are disrupting to the life of a defendant. Further, the extent of the disruption is usually worsened by the length of the delay."). Thus, defendant's anxiety weighs in his favor.

■　Defendant also claims prejudice to his ability to prepare a defense. "In cases in which inquiry into impairment of the defense is required, a defendant needs to show only that the delay caused a 'reasonable possibility of prejudice' to the ability to prepare a defense." *Harberts*, 331 Or at 86 (citing *State v. Ivory*, 278 Or 499, 508, 564 P2d 1039 (1977)). Defendant argues, in particular, that his defense was impaired because his attorney lost a file containing letters and documents sent from defendant to his attorney. Defendant, however, fails to indicate what information those letters and documents may have contained that might have aided his defense. Consequently, defendant has not shown a reasonable possibility of prejudice to his ability to prepare a defense.

■　The question narrows, thus, to whether the delay here warrants dismissal pursuant to Article I, section 10. We believe that, under the circumstances of this case, dismissal is not required. Certainly, some of the admittedly lengthy delay here was unjustified and, as a result of that delay, defendant suffered some anxiety and stress-related physical symptoms. Those considerations, while they do weigh in defendant's favor, are insufficient to warrant dismissal. *See State v. Dykast*, 300 Or 368, 712 P2d 79 (1985). In *Dykast*, the defendant was charged with two counts of delivery of a controlled substance in violation of ORS 475.992. Nearly 19 months passed between the defendant's arrest and trial. The court found that, of those 19 months, more than 13 months of delay was attributable to the state. In addition, the court acknowledged that, as a result of that delay, the defendant had suffered additional anxiety and stress related to the pending charges. Nevertheless, the court rejected the defendant's argument under Article I, section 10, holding that the mere demonstration of anxiety and unjustified delay did not warrant dismissal:

"We are not convinced, however, that the defendant's additional anxiety and stress were so great as to require dismissal. We agree with the trial court that, on balance, defendant has not been deprived of his Article I, section 10, . right to a 'speedy trial.' " *Dykast*, 300 Or at 378.

*Emery*, 318 Or at 472-74, was similar. In *Emery*, the defendant was cited for illegal possession of a game animal in violation of ORS 496.992(1). Nearly two years after his citation, the defendant moved to dismiss the charges against him under Article I, section 10. Before the Supreme Court, the state conceded that the delay in bringing the case to trial was unjustified and thus was attributable to the state. The court also acknowledged that, as a result of the pending charges, the defendant suffered anxiety and inconvenience but it concluded that that asserted personal prejudice did not amount to "cognizable prejudice" for speedy trial purposes because it amounted to nothing more than an extension of the "ordinary anxiety and inconvenience caused by the pending criminal charge[.]" *Id*. at 473. Ultimately, the court rejected the defendant's argument under Article I, section 10, holding that the unjustified delay and the defendant's ongoing anxiety were insufficient to require dismissal.

The Supreme Court's decisions in *Dykast* and *Emery* stand in sharp contrast to its decision in *Harberts*. There, the court dismissed, pursuant to Article I, section 10, aggravated murder charges against a defendant who had endured five years of pretrial incarceration and whose defense was prejudiced as a result of the partially unjustified delay. In concluding that dismissal was required, the court in *Harberts* emphasized that the historic rationale underlying the speedy trial guarantee of Article I, section 10, is prevention of prolonged pretrial incarceration. That historic rationale—and the fact that the defendant in *Harberts* had been subjected to five years of pretrial incarceration—was central to the court's disposition. *See* 331 Or at 88 (prolonged pretrial incarceration "shortens the constitutionally permissible measure of delay"); *id*. at 90 (burden on state to justify delay heightened where defendant is subjected to prolonged pretrial incarceration); *id*. at 93-94 (protracted pretrial incarceration personally prejudiced the defendant). In addition, the court was careful to identify the ways in which the defendant's defense

was prejudiced by the delay and concluded that, because the defendant had established all of the various species of prejudice, "[t]he prejudice factor weighs heavily in defendant's favor." *Id.* at 97.

 In short, the result in *Harberts* was founded largely on the defendant's lengthy pretrial incarceration and the defendant's proof of a reasonable possibility that the delay prejudiced his defense. *See also Haynes v. Burks*, 290 Or 75, 82, 619 P2d 632 (1980) (need for speedy trial most urgent "when both pretrial imprisonment and possible impairment of the defense coincide"). Neither of those severe forms of prejudice is present here, nor were they present in *Dykast* and *Emery*. In both *Dykast* and *Emery*, the court did not require dismissal under Article I, section 10, despite some measure of unjustified delay and delay-related anxiety. Thus, the proposition implicit in *Dykast* and *Emery* — and the one that guides our analysis here — is that the absence of either lengthy pretrial incarceration or prejudice to a defendant's defense weighs against concluding that dismissal is required under Article I, section 10. *See Emery*, 318 Or at 469-70 (suggesting that dismissal under Article I, section 10, is an appropriate remedy only where there is extreme and wholly unjustified passage of time, purposeful prosecutorial delay, or probable prejudice to the defense). In other words, in instances where (1) there is delay that, while unjustified, does not weigh heavily in the defendant's favor; and (2) the only form of "prejudice" proven by the defendant is an extension of the ordinary stress and anxiety that accompanies any criminal prosecution, the nominal weight of those factors generally will not overcome the absence of either lengthy pretrial incarceration or meaningful prejudice to the defense.[4]

---

[4] That approach is also consistent with several of our opinions in which we suggested that, without a showing of either lengthy pretrial incarceration or prejudice to the defense, a case was not subject to dismissal under Article I, section 10. *See Hadsell*, 129 Or App at 178 (given, *inter alia*, the defendant's tenuous claims of prejudice to her defense, the unjustified delay "does not justify the drastic remedy of dismissal"); *State v. Moylett*, 123 Or App 600, 606, 860 P2d 886 (1993), *rev den* 319 Or 150 (1994) (denying dismissal on constitutional speedy trial grounds despite lengthy pretrial appeal and potential anxiety attributable to pretrial delay because, *inter alia*, the "[d]efendant was never incarcerated, and was not prejudiced by the delay in his ability to defend the case"); *State v. Langlois*, 54 Or App 452, 456-58, 635 P2d 653 (1981) (despite state's negligence in bringing the defendant to trial, the defendant's failure to prove prejudice to his defense precluded

Accordingly, having considered all of the relevant factors,[5] we reject defendant's speedy trial claim under Article I, section 10, of the Oregon Constitution.

Defendant's speedy trial claim under the Sixth Amendment to the United States Constitution[6] is similarly unavailing. In addition to considering the factors above, the speedy trial analysis under the Sixth Amendment considers a fourth factor concerned with whether the defendant ever asserted his right to a speedy trial. *Barker*, 407 US at 528-29. In this case, defendant never asserted his right to a speedy trial at any point before he filed his motion. Therefore, in consideration of all the relevant factors, we reject defendant's federal constitutional claim. *State v. Garcia-Plascencia*, 148 Or App 318, 324, 939 P2d 641, *rev den* 326 Or 58 (1997) (rejecting the defendant's Sixth Amendment speedy trial claim because the defendant had failed to demonstrate prejudice).

■ We next turn to defendant's statutory speedy trial claim. ORS 135.747 provides:

> "If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

dismissal); *State v. Vance*, 53 Or App 290, 297, 631 P2d 843 (1981) (concluding that, despite state's concession that delay was unjustified, the defendant's failure to show prejudice precluded dismissal under Article I, section 10).

[5] It is incumbent on a court assessing a claimed speedy trial violation under Article I, section 10, to refrain from mechanically "balancing" all of the relevant factors to determine if dismissal is required. Rather, we must consider each of the relevant factors and assign "weight" to them *vis-à-vis* the principles underlying the speedy trial provision of Article I, section 10. *Harberts*, 331 Or at 72. The distinction between balancing and weighing was explained in *Haynes*:

> "We know no scales that provide a common denominator for the 'weight' of an extra month's pretrial imprisonment and the 'weight' of prosecution neglect, or good faith necessity, or deliberate delay. The point of the formula is that all relevant criteria be examined and none overlooked or ignored. The proper disposition in the individual case is not a question of addition or subtraction but of examining the relevance of each element in giving effect to the constitutional guarantee." 290 Or at 81 (citations omitted).

[6] The Sixth Amendment to the United States Constitution states, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]"

The Supreme Court has interpreted ORS 135.747 to be a "housecleaning" mechanism that provides a "method for dismissing cases that are languishing in the criminal justice system[.]" *Emery*, 318 Or at 467. "The dispositive inquiry under ORS 135.747 is whether defendant occasioned or acquiesced in the delay and whether the length of time that elapsed in bringing the case to trial was reasonable." *State v. Hampton*, 152 Or App 742, 745, 954 P2d 1267 (1998) (citing *Emery*, 318 Or at 470-71).

Applying that standard, defendant argues that, even after discounting delay to which he consented, the remaining delay in this case was unreasonable and that the trial court erred in denying his motion to dismiss. The state responds by arguing that (1) ORS 135.747 is categorically inapplicable here because defendant's trial was postponed several times at his request and with his consent, and (2) even if ORS 135.747 is applicable, the delay in this case was nonetheless reasonable because of the complex motions before the court and the interlocutory appeal.

■ We reject, at the outset, the state's argument that defendant was categorically excluded from obtaining dismissal under ORS 135.747 due to his request for postponement. In *State v. McQueen*, 153 Or App 277, 281, 956 P2d 1046, *rev den* 327 Or 554 (1998), we considered that same categorical exclusion argument and concluded that a defendant whose trial was postponed upon his application or consent could nevertheless maintain a statutory speedy trial claim to the extent that his claim is based on delay beyond that to which he consented. *Id.* We decline to revisit that holding in this case.

■ Thus, the pivotal question is whether, under the circumstances of this case, the portion of the total pretrial delay to which defendant did not consent was "reasonable" delay for purposes of ORS 135.747. *Emery*, 318 Or at 470-71. The total lapse of time here was more than five and a half years. Of that total time, some portion was occasioned by defendant's own consent or application, while a greater portion was dedicated to addressing the merits of defendant's discovery request and the state's ensuing (and ultimately successful) mandamus action. None of those periods of time—which

together constitute the vast majority of the total delay here—warrants dismissal under ORS 135.747. *See McQueen*, 153 Or App at 281 (excluding from statutory speedy trial inquiry delay occasioned by a defendant's consent or application); *State v. Moylett*, 123 Or App at 605 ("[t]he workings of the appellate process to resolve defendant's pretrial motion constitute a valid explanation for the delay in this case").

Nevertheless, as discussed earlier, there is a significant period of time—roughly 15 months—for which the state acknowledges there is no good explanation. That total period of unjustified delay alone is substantially greater than what is typical for complete resolution of misdemeanors such as the DUII offense at issue here, *Emery*, 318 Or at 471 n 17 (under the Standards of Timely Disposition adopted by the Oregon Judicial Conference, 90 percent of all misdemeanors should be adjudicated within 90 days, 98 percent in 180 days, and 100 percent within one year), and, under the circumstances, the 15-month delay here was not "reasonable" under ORS 135.747.[7] *Id.* at 470-71. Accordingly, we conclude that the trial court erred in denying defendant's motion to dismiss pursuant to ORS 135.747.

Reversed and remanded with instructions to dismiss charges against defendant without prejudice.

---

[7] Certainly, a limited portion of those 15 months might reasonably have been dedicated to both resolving the merits of the state's motion for reconsideration and to court administrative necessity after entry of judgment in the mandamus action. Nevertheless, because the 15-month delay here far exceeds the time necessary to complete either of those actions, we need not determine what portion of that delay might have been reasonable under the circumstances.